[No. 1545.]

### The Chicago Bazaar Co. v. McNichols.

Taxation—Lien—Merchandise—Statutory Construction.

By section 2819, General Statutes, taxes on personal property is made a perpetual lien upon the property on which it is levied. By Session Laws, 1885, p. 320, such lien is made to extend to any stock of merchandise held by the person taxed while engaged in merchandising whether such stock is the identical stock taxed or contains articles added thereto after such assessment or levy. Where a stock of goods is transferred after a tax is levied thereon the lien follows the goods and may be enforced against the vendee as to the specific goods received from the vendor against whom the tax was levied, but does not attach to merchandise afterwards added to the stock by the vendee.

*Appeal from the District Court of Pitkin County.*

Messrs. Rogers, Cuthbert & Ellis and Mr. Pierpont Fuller, for appellant.

No appearance for appellee.

Thomson, P. J.

In the year 1894, one G. W. McCracken, who was the owner and in possession of a stock of goods in Aspen, Pitkin county, sold and delivered the stock to St. Aubin & Magnon, a copartnership. This firm dealt in the goods, making sales from the stock and replenishing it by new purchases, until January, 1896, when the partnership was dissolved and the goods transferred to a firm called Magnon & Company. The latter firm continued in possession of the stock until July, 1896, when they turned it over to Ernest St. Aubin. St. Aubin immediately mortgaged the property to T. G. Lyster, of the First National Bank of Aspen, to secure a debt due the bank, and delivered the possession to the mortgagee. About thirty days later, the mortgagee sold the goods to Marshall Field &

Company, of Chicago, who shortly afterwards transferred them to the appellant, the Chicago Bazaar Company. From 1894 until the date of the sale to the appellant, the stock was undergoing continual change, by sales made in the usual course of business, and new purchases to make good the depletion, until, on the latter date, there was practically nothing left of the stock in existence in 1895. In addition to the goods, there were certain fixtures, consisting of shelving, counters, show cases, and a safe, which, in the several transfers, passed with the goods. State and county taxes were assessed and levied upon the stock and fixtures · for the years 1894, 1895 and 1896. There was paid in 1895, upon the taxes then due, the sum of $100. No further payment was ever made. The county treasurer was proceeding to collect the taxes due, by distress and sale of the goods in the possession of the Bazaar Company, when ·it· instituted this proceeding for an injunction against the treasurer and his deputy, to restrain them from levying the distraint process, or collecting the taxes from it. A temporary injunction was allowed, on the deposit by the plaintiff with the treasurer of $1,822.53, and the giving of an injunction bond. On the final hearing the injunction was dissolved, and judgment entered for the defendants. The plaintiff appealed.

The only question which the record presents is to what extent the property in the hands of the plaintiff is liable for the taxes assessed and levied upon the stock and fixtures in the possession of its vendors. It is provided by section 2819 of the General Statutes, that all taxes levied or assessed upon personal property shall be and remain a perpetual lien upon the property so levied upon, until the tax is paid; that if the tax shall not be paid on or before the first day of January next succeeding the levy, the county treasurer shall collect the same by distress and sale of any of the property taxed, or any other personal property of the person assessed; and that if the property or any part of it has been removed from the county, or is so conditioned that the treasurer cannot find or obtain the same, he shall sue the person taxed in an action

of debt before any court of his county having jurisdiction, and obtain judgment for the amount of the tax, with interest, costs and charges. By an act approved April 7, 1885, it is provided that the perpetual lien mentioned in section 2819 shall, in all cases of taxes assessed and levied upon merchandise, extend to and hold any stock of merchandise held by the person or persons taxed while engaged in the business of merchandising, whether such stock is the identical stock assessed or taxed, or contains articles which have been added thereto after such assessment or levy. Session Laws, 1885, p. 320.

Originally, the lien created by the statute was confined to the specific property levied upon, and that property could be seized, no matter in whose hands it might be, so long as it remained in the county, or was so conditioned that the treasurer could find or obtain it. Afterwards, the lien was extended, in case of taxes assessed and levied upon merchandise, so as to embrace any stock of merchandise held by the person taxed while engaged in the business of merchandising, whether it was the identical stock which had been assessed or not. That there may be distress and sale of property in the hands of a vendee on account of taxes assessed against his vendor, the property seized must be the identical property upon which the taxes became a lien. The lien for taxes embraces only the specific property levied upon, except that in case of a stock of merchandise, which is subject to constant change in the articles composing it, the lien attaches to the stock, and the entire stock, through all its changes, is subject to the lien so long as it remains in the hands of the person taxed; but the lien does not embrace additions to the stock made by his vendee. When the stock is sold and passes into the hands of another, the lien follows the specific goods which he received, but it reaches no subsequent additions or renewals.

It appears that when the stock passed into the possession of the plaintiff, by reason of sales which had been previously made from it, and new purchases which had been added to it, it was so changed that the articles of which it was composed

were not the same articles upon which the taxes of 1894 and 1895 had been levied. From 1895 the stock had passed through several hands ; it had been the subject of constant dealing, and when the plaintiff became its owner its composition was completely changed. The taxes of 1894 and 1895 were not a lien upon the goods which the plaintiff received, and could not be collected by distress and sale of those goods. The treasurer's remedy, if he had any, was by suit against the persons originally liable for the taxes.

What we have said does not apply to the fixtures. They are still in existence, intact, in the possession of the plaintiff. They are held by the lien which attached to them at first, and are subject to sale for the taxes which were levied upon them in 1894, 1895 and 1896. Further, it is conceded that there was in the possession of the plaintiff a sufficiency of goods, upon which the tax of 1896 became a lien, to pay the amount of that tax. The taxes of 1894 and 1895 aggregated $1,080.18, and the tax of 1896 amounted to $842.35. Of the sum deposited with the treasurer, money sufficient to pay the tax of 1896 and the taxes chargeable against the fixtures for 1894 and 1895 should be retained by him, and the residue returned to the plaintiff.

The judgment is reversed with instructions to the court below to ascertain the amount which may be properly charged against the fixtures on account of the taxes of 1894 and 1895, to deduct that amount and the tax of 1896 from the sum deposited, to order the return to the plaintiff of the balance, and to enter judgment generally in conformity with this opinion.

*Reversed.*