## MORSE v. STANLEY COUNTY et al.

A county and its treasurer, when sued by the owner to enjoin the collection of specified taxes on horses, could not, by alleging that taxes were due thereon for previous years, convert the action into

mandamus to procure their assessment for such years, as it will be presumed that the proper county officers will collect taxes for such years, upon their attention being called to their nonpayment.

Where the abstract of the evidence contains over 200 pages of testimony, most of which was in the form of question and answer, and about half of which related to matters not in issue, and a large part of the other testimony was immaterial to the question raised on appeal, only 30 or 40 pages being necessary to set out the material testimony, the Supreme Court will not consider it.

Pol. Code, § 2059, requires personalty to be assessed in the county where the owner or agent resides, provided that where the owner of live stock resides in a county other than where it usually ranges and has established a ranch in the county where it ranges, at which the general operation of herding and feeding the stock are conducted, and the herder or foreman ordinarily has headquarters, and at which the stock is ordinarily rendezvoused, it shall be listed and assessed in the county where such ranch is situated. **Held**, that the statute contemplated the taxation of live stock at such place as might be considered its home, and each separate "ranch" for live stock was the situs for the taxation of the stock thereon, though it was owned and controlled by one residing in another county.

The law presumes the acts of county taxing officers to be lawful.

In a suit to enjoin the collection of taxes on personalty, on the ground that the assessment was invalid, the burden was upon plaintiff to plead and prove facts showing the invalidity of the assessment.

Under Pol. Code, § 2066, permitting live stock to be assessed at any time in the county in which they are found ranging, during the months of June to November of each year, inclusive, providing they have not already been assessed in another organized county the same year, even if horses were properly assessable in a certain county, if they had not been assessed there, and were found ranging in another county after June 1st, the assessor of such other county could assess them.

There is no presumption that an assessment statement of property assessed in one county covers any property except that situated in such county.

In a suit to enjoin the collection of taxes upon stock, on the ground that they were taxable in another county, statements, in plaintiff's oath attached to his assessment statement, that the statements covered all the property taxable against him, were not admissible to prove that the property contained in such statements included property taxable in other counties, being admissable only to prove that plaintiff had listed the amount of property stated therein.

Statements, in the oath of a taxpayer attached to his assessment statement, that such statement included all of his property taxable in a certain county, was a self-serving declaration, so as to be

inadmissible in a suit to enjoin the collection on the ground that the property was taxable in such other county and not in defendant county.

(Opinion filed October 12, 1910.)

Appeal from Circuit Court, Stanley County. Hon. LORING E. GAFFY, Judge.

Action by Corbin Morse against Stanley County and another, as treasurer of said county. From a judgment for defendants and an order denying a new trial, plaintiff appeals. Affirmed as modified.

*Charles W. Brown* and *H. R. Horner,* for appellant. *John F. Hughes,* for respondents.

WHITING, P. J. This is an action brought to restrain the defendant county and its treasurer from enforcing the collection of certain taxes, which had been assessed and levied against the plaintiff for the year 1904 upon horses and cattle, claimed by the defendants to be taxable in said Stanley county; the plaintiff claiming, as to the cattle, that the same did not belong to him, and that, as to the horses, that they were properly taxable in Pennington county and not in Stanley county. The defendants, answering, pleaded that the ownership of this stock and possession were in the plaintiff, and that said stock were kept, fed, and ranged in Stanley county, where they had been assessed and taxes levied. Defehdants further alleged that, for years prior to 1904, the plaintiff had been the owner of many head of horses and cattle properly taxable in Stanley county and which had not been assessed for taxes. Defendants, in their answer, not only prayed that plaintiff's complaint be dismissed, but that the true taxes for years prior to 1904 be ascertained and judgment rendered therefor. Judgment entered in favor of defendants. A motion for new trial having been denied, plaintiff has appealed to this court from said judgment and order denying a new trial.

The cause was tried to the court without a jury, and the court made and entered findings of fact and conclusions of law therein. The conclusions and judgment provided, among other things, that the proper taxing officers be required to place upon

the tax list of Stanley county for the years 1898 to 1903, inclusive, horses and cattle to the value of $20,000 as taxable property of plaintiff in said Stanley county, and to extend and collect a levy of taxes for each of said years against the plaintiff upon such valuation.

The court's findings of fact were, in brief, as follows: That the defendant Stanley county was at all times hereinafter mentioned an organized county of this state, and defendant Poste is and has been since January, 1905, its treasurer. That plaintiff is and was a resident of Pennington county, and at all times hereinafter mentioned engaged in the business of raising, buying, and selling horses, cattle, and live stock. That in 1897 plaintiff purchased a large bunch of over 1,400 horses, which had been raised and were located in Stanley county, at or near what was known as the "15 ranch," and said horses were then and theretofore branded and known as the "15" horses. That after the purchase plaintiff kept, pastured, and reared the said horses and their increase at or near said "15 ranch" in said Stanley county; plaintiff having purchased said ranch and its improvements. That such improvements consisted of a substantial house, barns, sheds, and a corral for accommodation of horses and cattle. That connected with such ranch buildings were pens used by the former owners for penning the horses, which pens were located 7 miles from said ranch buildings in Stanley county; all of such buildings and pens being some 15 miles from Pennington county line. That since the purchase of such ranch and buildings plaintiff has continued to keep the stock upon such ranch, has put up hay at said ranch, and has used the corrals and pens for branding and otherwise caring for such horses. That in looking after and caring for the horses plaintiff has, during each year, rounded them up and driven them to these "15 pens" for the purposes of branding and doing any other work in regard to such horses, even driving horses that might have strayed into Pennington county back into the "15 pens" for the purpose of branding or otherwise caring for them. That these horses, while owned by the former owner, had been taxed in Stanley county, and their situs has never since been

changed. That a foreman had been kept at said "15 ranch." That said horses have always been rounded up at said ranch when needed for any purpose. That during the year 1904 plaintiff was the owner of, and had at or near said "15 ranch" in Stanley county, 300 head of "15" horses under three years old and over six months, and 300 head of "15" horses three years old, and that said horses were not assessed in any other county for said year 1904. That during 1904 the assessor of Stanley county, at the proper time, duly and legally assessed 500 head of these horses as the property of plaintiff, and duly returned such assessment and the various taxes were properly levied upon such assessment. That such assessor of Stanley county assessed, as the property of plaintiff for said year, a large number of cattle, but that plaintiff did not own and keep in Stanley county during such year the cattle so assessed. And that the assessment of the plaintiff to the extent of the amount assessed on these cattle was excessive. Then followed a finding in relation to the horses that should have been assessed against plaintiff in Stanley county for the years 1898 to 1903, inclusive, together with their assessed value.

Evidence was offered and received showing that plaintiff had a large cattle and horse ranch in Pennington county; that he himself lived at Rapid City in said county; that he had a superintendent over his stock business (including the stock in Stanley county); that this superintendent lived on the ranch in Pennington county; that both horses and cattle were assessed as his property, in Pennington county, in year 1904. No findings were made covering above points. The evidence showed clearly that any assessment made in 1904 in Pennington county did not cover the horses assessed in Stanley county.

In so far as the taxes for the years prior to 1904 were concerned, the defense could not convert this cause into a mandamus proceeding by setting forth the fact that the taxes were due for such previous years. It will be presumed that, upon their attention being called to the facts, the proper officers of Stanley county will take such steps as will be proper to collect any taxes that should be paid by the plaintiff for the years prior to 1904. If

such officers should refuse to do their duty therein, it will then be time for the matter to be brought to the attention of the courts.

As regards the taxes for the year 1904, we are of the opinion that the judgment of the lower court should be affirmed for three separate and distinct reasons.

The condition of the abstract herein is such as to warrant us in disregarding same. Over 200 pages of testimony are found in the abstract, nearly or quite one-half of which relate solely to the matter of cattle, all issues relating to which were eliminated from this case when respondent failed to appeal herein. With a few exceptions, the evidence is reproduced in such abstract in the form of question and answer without condensation in any manner. A large part of the testimony, other than that relating to the cattle, could have been eliminated from the record; the same being clearly immaterial on this appeal. Such part of the testimony as really bears upon any matter material to this appeal could have been so condensed that a record properly prepared would not have covered, so far as the testimony was concerned, to exceed 30 or 40 pages. This court should not be required to wade through such records, and we believe it is our privilege, if not our bounden duty, when such a record is presented, to ignore the same and treat the appeal as though no abstract was on file.

The evidence herein clearly sustains the material findings of fact and such findings of fact are ample to bring these horses, for assessment purposes, under the provisions of the second para-graph of section 2059 of the Political Code, taxable in Stanley county. It appears clear to us that the "15 ranch" was a separate and distinct ranch from those in Pennington county. If, under the facts as found here, these horses are not taxable in Stanley county, then if a person lives in one county, or his foreman or superintendent lives therein, and from such point manages and conducts ranches throughout the whole state—no matter if some of such ranches cover large parts of other counties—still all of his property, no matter how great its value, would be taxable only in the county where he or the foreman lives, while as a matter of fact such county would have no equitable right to any of such

tax whatsoever. We are of the opinion that each separate and distinct ranch where live stock are in the habit of congregating or of being cared for is a situs for taxation purposes, separate and distinct from all others, though the control of such ranch may be under a person resident elsewhere; the real intent of such part of section 2059, supra, being that the live stock should be taxed at such place as might be held the home of such stock. Certainly there is not a syllable in this case that would place the home of the "15" horses elsewhere than at the "15 ranch" in Stanley county, it appearing clearly that this was their original home, that they had always been kept upon this ranch, that when they had wandered therefrom they had been returned to such ranch, and that the branding of the young had been done on this ranch.

We think there is a third reason why this judgment should be affirmed. It appears uncontradicted that the proper officers of Stanley county listed and assessed for taxation purposes this lot of horses as situated in Stanley county. The law presumes the acts of these officers to be lawful. The plaintiff comes in and asks to enjoin the collection of taxes levied upon such assessment. It becomes incumbent upon him both to plead and prove facts showing this assessment of stock to be invalid. To show such invalidity, it becomes necessary for him to allege and prove: That his property was not located in Stanley county; that the situs for its taxation was elsewhere; and further, even if it were conceded that the proper place of taxation was in Pennington county, such property being found in Stanley county, it was incumbent upon plaintiff to allege and prove that the property, attempted to be assessed in Stanley county, had actually been assessed in Pennington county, where it was properly subject to assessment. This latter is necessary for the reason that, under section 2066 of the Revised Political Code, no matter if these horses were properly taxable in Pennington county, yet if they had not been so taxed in Pennington, and were found by the assessor of Stanley county in his county after June 1, 1904, he had a perfect right and full authority to assess them. It was incumbent upon plaintiff to allege and prove facts that would take him from out of the provisions of said section 2066.

Let us look now at the facts of the case as they practically stand undisputed. Plaintiff offered in evidence the assessor's returns in Pennington county. These were absolutely immaterial without proof that the property therein described included that attempted to be assessed in Stanley county. There is no presumption that an assessment statement in one county covers any property except property situated in that county. While such statements might be received as evidence against the plaintiff, they were not evidence in his favor except as to the one fact that he had listed that amount of property. In so far as he swore, in his oath attached to such statement, that the statements covered all property taxable against him, such oath was not competent evidence upon the trial of this cause to prove that the property contained in such statement included property taxable elsewhere; neither was it evidence, in favor of plaintiff, that such statement contained all the property taxable in Pennington county, it not being receivable for that purpose, on behalf of plaintiff, for the obvious reason that it would be the receipt of a self-serving declaration. There was therefore nothing in the record to show that plaintiff had been assessed in Pennington county for all the property upon which he was liable to be taxed in such county. A reading of the testimony cannot but convince one that plaintiff studiously avoided giving any testimony divulging the number of horses he possessed in either of these counties; but it does appear that he was engaged in the raising of both horses and cattle, that he had over 200 saddle horses, and employed a large number of men. It clearly appears that he had, running on the range, which could not be included among the saddle horses, from 500 to 700 head of horses, which horses were accustomed to range in Stanley county. His assessment statement in Pennington county apparently covered only the saddle horses and work horses shown by the testimony. There is absolutely no evidence that this 500 to 700 head of horses, running on the range, were ever taxed at all, except as they were being taxed by Stanley county. This appears to us as a case of attempted tax dodging, in which dodging the plaintiff has failed, and in which case the proof shows that—

whether we consider these horses as being located so that at all times they were properly taxable in Stanley county, or whether we treat them as stock found in Stanley county, which should have been, and yet were not, assessed in Pennington county—the assessment of same in Stanley county was perfectly legal and should stand.

Appellant has assigned as error the failure of the court to make certain findings prayed for. The court found on all matters material to the issues raised. Appellant also has assigned numerous alleged errors in the rulings of the court upon the admission and rejection of evidence. No material evidence was rejected, and there was ample evidence properly admitted to support the findings of the court.

The judgment of the trial court should be modified, eliminating therefrom everything relating to taxes for years prior to 1904, and, as so modified, the judgment as well as order denying new trial should be affirmed, and it is so ordered. Neither party shall recover costs herein.

HANEY, J. (dissenting). This is an action to enjoin the collection of taxes levied in the defendant county in 1904, and to cancel assessments of the same year embracing horses and cattle owned by the plaintiff, on the ground that the property was not subject to taxation in that county. It is undisputed that the plaintiff was engaged in the horse and cattle business; that he resided on a large, completely equipped ranch near Rapid City, in Pennington county; that he owned and operated another completely equipped ranch in Pennington county about 20 miles from the line between that county and the defendant county, where his general foreman resided, known as the "Cane Creek" ranch; that in 1904 he was assessed in the defendant county with 250 horses "under three years and over six months old," with 250 "horses of the age of three years and over," with 400 cattle "under two years and over six months old," and 1,100 cows "two years old and over"; and that in the same year he was assessed in Pennington county with certain horses and cattle under similar general descriptions.

The decision of the circuit court contains these findings of fact: "(3) That during the year 1897 the plaintiff purchased of John Massingale and James Ross, then and theretofore comprising the copartnership of Massingale & Ross, a large bunch of horses, consisting of over 1,400 head. That theretofore these horses had been raised and were located in the county of Stanley in the state of South Dakota, at and near what was known as the '15 ranch,' and said horses were then and theretofore branded and known as the '15' horses. That after said purchase by plaintiff he continued to keep, pasture, and rear the said horses and their increase at and near the said '15 ranch' in said Stanley county, he having at the same time purchased the said ranch and its improvements. The said '15 ranch' consisted of a substantial house of five rooms with a good cellar, also large corrals, large barns, and sheds for the accommodation of horses and cattle and other live stock, which buildings were located under the 'wall' and on the White river. Connected with these ranch buildings were pens, known as the '15' pens, which the said former owners of said horses used for penning said horses. These pens were located above the 'wall' and some seven miles from the main ranch buildings; all of said buildings and pens being in Stanley county, about 15 miles east of the Pennington county line. That since the purchase of said ranch and horses the plaintiff has continued to keep them upon the same ranch, has put up hay at said ranch, has used the same corrals and pens for branding and otherwise caring for said horses, and has moved the said '15' pens to another location, but still within the limits of said county of Stanley, and only a short distance from their former location. In looking after and caring for these said horses, the plaintiff has since the purchase of them, during each year, rounded them up and driven them to these '15 pens,' for the purpose of branding or doing any other work in regard to said horses, even driving any of said horses that might have strayed over into Pennington county back to the '15 pens' for the purpose of branding or otherwise caring for said horses. That during the time the said horses were owned by said Massingale & Ross taxes were paid upon them in Stanley county,

and their situs has never since been changed. ' Plaintiff has kept a foreman at said '15 ranch,' and the said horses have always been rounded up at. this ranch when needed for any purpose, and have not been rounded up or cared for elsewhere than in Stanley county and at said ranch.   (4) That during the year 1904 the plaintiff was the owner of and had at and near the said '15 ranch' in Stanley county, S. D., over 300 head of said '15' horses under three years old and over six months and of the valuation of more than $15 per head; and had, also, at the same place, over 300 head of said '15' horses of the age of three years old and of a valuation of more than $20 per head.   That these horses were, and had been for many years prior thereto, kept and reared in Stanley county, S. D., and said horses were not assessed in any other county for said year of 1904 for the purposes of taxation. * * * (7) That during the years from 1898 to 1903, inclusive, the plaintiff was the owner of and kept in Stanley county at said '15 ranch' the said '15' horses to the number of and exceeding 1,000 head during each of said years, and which horses were during said years of a value exceeding $20 per head.   That the said horses during all of said years were kept in the county of Stanley, and were 'properly and legally assessable in said county by the assessor of said county, and were not assessed in any other county of the state or in any other state for said years.   That by an oversight of the assessor of said Stanley county the said horses were not listed in said county for said years, and that the same should have been assessed against the plaintiff during each of said years for the purposes of taxation in said Stanley county, at a valuation of $20,000 for each of said years."

And these conclusions of law: "That the temporary injunction granted herein should be vacated and the permanent injunction herein prayed for should be denied.   That the decree herein should cancel the taxes assessed against the plaintiff on said cattle, but that the assessment for said horses be. decreed valid, and that it be decreed that said assessment and tax levy so herein modified be confirmed.   That the plaintiff should be assessed on a valuation of $20,000 for each year and all of the years from 1896 to 1903,

inclusive, and that the court in its decree herein should order and direct the county auditor of said county, and other taxing officers of said county, to assess against the plaintiff a valuation of $20,000 for said horses for each of said years upon the tax lists of said years, and that the treasurer of said county and other tax collecting officers of said county be required to forthwith proceed to collect the same in the manner provided by law for the collection of delinquent taxes. And that defendants have judgment for their costs and disbursements herein."

As the trial court decided in favor of the plaintiff, except as to the Massingale horses, and as the defendant did not appeal, matters affecting the situs of those horses alone demand attention.

So far as material to this appeal, the language of the statute relating to the situs of personal property for purposes of taxation is as follows: "Personal property, except such as is required in this chapter to be listed and assessed otherwise shall be listed and assessed in the county, town or district where the owner or agent resides; * * * provided, that where the owner of live stock resided in a county, town or district other than that in which such live stock ordinarily and usually ranges or feeds and where such owner has established a ranch or ranches within the county, town, or district in which such live stock ordinarily and usually ranges and feeds, at which ranch or ranches the general operations of herding and feeding such stock is conducted and at which the herder or foreman of such live stock ordinarily has headquarters while in the discharge of his duties and at which such stock is ordinarily and usually rendezvoused, * * * such live stock shall be listed and assessed in such county, town or district in which such ranch or ranches are situated" In prescribing these special rules for determining the situs for purposes of taxation of live stock ranging at large under the conditions existing in the western portions of this state when such rules were adopted, the Legislature, of course, intended that all live stock should be subject to taxation somewhere, but that none of it should be subject to taxation in more than one place. The statute itself is not ambiguous, though its

proper application may be extremely difficult in certain cases. The same person may own more than one band of horses and more than one herd of cattle. Such bands and herds may intermingle with each other and with bands and herds belonging to other persons. Both may range in more than one taxing district. Live stock impelled by storms or other causes may wander long distances from their usual grazing grounds. Definite descriptions of individual animals in assessment rolls is practically impossible. So the Legislature wisely enacted that the situs of such property shall depend on its relation to some definite locality—its owner's residence, or such a ranch headquarters as defined by the statute. Consequently, the same person may own animals which are subject to taxation in one county and other animals which are subject to taxation in another county. If such person resides in either county, his residence will be the situs of all his animals not related to a ranch headquarters elsewhere; residence situs being the rule, ranch situs the exception.

In absence of either of the conditions specified in the proviso, plaintiff's horses were not subject to taxation in the defendant county. One who relies on an exception must bring his case clearly within its terms. So the paramount question presented by this appeal is whether it properly appears from the record that the plaintiff established a ranch in Stanley county at which the general operations of herding and feeding the Massingale band of horses were conducted, at which the foreman of such live stock ordinarily had his headquarters, and at which such stock was ordinarily and usually rendezvoused. It is regrettable that the learned judge who tried this cause, in framing his decision, did not conform the language of his findings of fact to the precise issues involved. It will, however, be assumed that the decision should be construed as finding the facts required by the statute to fix the situs of the Massingale horses at the "15" ranch, which is in the defendant county, and the question whether such finding is sustained by the evidence will now be considered. It is undisputed that the plaintiff's Cane Creek ranch was an established headquarters for all of his horses and cattle ranging in the

eastern part of Pennington and western part of Stanley county; that the Massingale horses ranged in both counties, according to one of the defendants' witnesses about "half and half in each"; that one Isam Brown, the plaintiff's general foreman, had charge of plaintiff's horses and cattle so ranging in both counties, including the Massingale band; and that Brown resided at the Cane Creek ranch from which the general operations of herding and feeding such stock was conducted and at which Brown continuously had his headquarters while in the discharge of his duties. It may be assumed, as there was evidence offered by the defendants tending to prove it, that there were suitable buildings at the "15" or Massingale ranch to render it a situs ranch if it has been so occupied and used by the plaintiff; that much, if not all, of the time, one man employed by the plaintiff lived thereat; that the Massingale horses usually were rounded up and branded at pens a few miles from the "15" ranch in Stanley county; that the Massingale horses continued to range in the same country in which they ranged when purchased by the plaintiff; and that their situs prior to such purchase was in Stanley county. But, assuming all these facts to be true, it does not follow that they were subject to taxation in that county. The mere ownership of ranch buildings situated within territory occupied by grazing horses or cattle is not in itself sufficient to determine the situs of such animals. It is undisputed that the employe who lived at the "15" ranch was under the control and direction of plaintiff's "Cane Creek" foreman; that the range usually occupied by the Massingale horses was under the control and supervision of the "Cane Creek" foreman; and that the general operations of herding and feeding such horses were conducted at and from the "Cane Creek" ranch. Clearly, then, the evidence was not sufficient to justify the trial court in deciding that these horses were subject to taxation in the defendant county.

The conclusion that the 1904 assessment of the Massingale horses in Stanley county may be sustained by reference to section 2066, Rev. Pol. Code, does not seem tenable to me for the reason that the facts essential to a valid assessment under that section

are not established by the evidence, are not pleaded by the defendants, and. are not found by the trial court, while the facts alleged and found regarding the assessment are clearly inconsistent with such conclusion. It does not seem to me that this court has authority to assess any of this property in Stanley county, even if it was not assessed elsewhere in 1904, or in any other year. If any of it was assessable in Stanley county in 1904, under section 2066, the court below might be directed to secure its assessment; but I cannot concur in the conclusion that an assessment invalid under section 2059 should be sustained by this court because the same property might have been subsequently assessed under section 2066. As the conditions were the same during all the time embraced by the record as they were in 1904, it necessarily follows that none of the plaintiff's horses were subject to taxation in the defendant county in any previous year, and that the court below erred in attempting to assess the same therein, assuming it had authority to do so if its findings had been sustained by the evidence.

Therefore, upon the record, as I understand it, I think the judgment of the trial court should be reversed, and a new trial ordered.