[No. 11500.  Department One.  January 7, 1914.]

CHARLES PORTER, *Respondent*, v. THE COUNTY OF YAKIMA
et al., *Appellants.*[1]

TAXATION—PERSONAL PROPERTY — LIABILITY — DISTRAINT.  Under Rem. & Bal. Code, § 9235, making personal property taxes a lien upon all real and personal property of the owner, and Id., § 9223, providing for distraint for personal property taxes. upon all goods and chattels belonging to the person charged, personal property taxes are made the debt of the person assessed, and distraint is not limited to the property assessed.

TAXATION — PERSONAL PROPERTY — CONNECTED WITH A "FARM"— SITUS FOR TAXATION.  Under Rem. & Bal. Code, §9125, providing that when the owner of live stock connected with a farm does not reside thereon, the stock shall be assessed in the county where the farm is situated, the word "farm" is used in a generic, rather than a restricted sense, and includes a ranch of grazing lands used exclusively for the raising of sheep; thus recognizing the equity of the home county to have the tax.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered June 10, 1913, in favor of the plaintiff, upon sustaining a demurrer to the answer, in an action for equitable relief.  Affirmed.

*Harold B. Gilbert* and *Sydney Livesey*, for appellants.
*Englehart & Rigg*, for respondent.

GOSE, J.—This is a bill in equity to enjoin the sale of certain sheep, distrained by the defendants for the purpose of enforcing the collection of taxes.  The defendants jointly

[1]Reported in 137 Pac. 466.

demurred to the bill, on the ground that it does not state
facts sufficient to constitute a cause of action. The demur-
rer was overruled, and the defendants having elected to rest
their case upon the record, a decree was entered permanently
enjoining the sale and directing the cancellation of the taxes
upon the treasurer's tax rolls. The defendants have ap-
pealed.

The complaint alleges that the sheep distrained are not
the sheep, nor any part of the band of sheep, upon which
the taxes sought to be collected were assessed. The statute,
Rem. & Bal. Code, § 9235 (P. C. 501 § 215), provides that:

"The taxes assessed upon personal property shall be a lien
upon all the *real and personal property* of the person as-
sessed, from and after the date upon which such assessment is
made, and no sale or transfer of either real or personal prop-
erty shall in any way affect the lien for such taxes upon such
property."

Section 9223 (P. C. 501 § 181), provides that, if personal
property taxes are not paid within the time therein provided,
after the requisite notice has been given, the county treas-
urer "shall distrain sufficient goods and chattels *belonging to
the person charged* with such taxes, if found within the coun-
ty, to pay the same," together with costs and interest.

The first section extends the lien to all real and personal
property owned by the person assessed at the date of the as-
sessment. Whether it expands or extends the lien to personal
property not assessed, but acquired subsequent to the assess-
ment, is not presented by the bill. The two sections, when
read together, make it clear that taxes upon personal prop-
erty are treated as the debt of the person assessed. Section
9223 empowers the county treasurer to distrain any of the
goods and chattels belonging to the person "charged" with
the taxes, sufficient in quantity to pay the same. In making
the distraint, the treasurer is not limited to the property as-
sessed, but may distrain any personal property belonging

to the tax debtor within the county, sufficient in amount to meet the taxes, together with costs and interest.

The complaint further alleges that, during all the year 1911, the respondent, a married man, with his family, resided at North Yakima, in Yakima county; that he and his family had no other residence or domicile during that year; that, during that year, he had leased, in Benton county, this state, certain farm and grazing lands, to the extent of 20,000 acres, which he occupied and used during all of that year as a stock farm; that he ran thereon and in connection therewith a band of 2,300 head of ewes; that the sheep were there fed, lambed, and sheared; that the farm was devoted exclusively to raising and caring for the sheep; that they were kept upon said lands during all the year 1911, except during the summer when they were ranged in the high mountains for about 120 days; that the farm was the headquarters for the sheep and packing outfits used in connection therewith; and that the sheep were not connected with any other farm. It is further alleged that, during the year 1911, the assessor of Benton county duly assessed the sheep; that the tax so assessed was $142.08, which the respondent paid to the county treasurer of Benton county; that, during the same year, the assessor of Yakima county assessed the sheep in Yakima county; that thereafter a tax was levied against the sheep in that county for 1911, amounting to $168.02, and that the respondent did not know of the assessment or levy of the tax until after the tax had become delinquent. The complaint further shows that the officers of Yakima county distrained 100 sheep in that county, belonging to the respondent, and that they were proceeding to sell them to satisfy the 1911 assessment made in Yakima county upon the sheep which were running and assessed in Benton county.

The applicable provisions of our statute are Rem. & Bal. Code, §§ 9121, 9125 (P. C. 501 § 53; 501 § 61). The former section provides that personal property, "except such as is required in this chapter to be listed and assessed otherwise,

shall be listed and assessed in the county where the owner or agent resides." The latter section provides:

"When the owner of livestock or other personal property connected with a farm does not reside thereon, the property shall be listed and assessed in the county or place where the farm is situated; if not listed in such county, then to be taxed where found."

The respondent did not reside on the Benton county farm in 1911. The question to be determined is, What did the legislature mean by "farm?" Clearly it was used in a generic rather than a restricted sense. The meaning to be ascribed to this word is that, where livestock has a home at a farm and the owner does not reside there, it shall be assessed in its home county. Where a tract of land, whether large or small, lying wholly within a single county, is used as a unit for the breeding, rearing, and feeding of stock, and the stock are there kept during the larger part of the year, as these sheep were kept in Benton county, the tract is a farm and the stock is "connected with a farm" within the meaning of the statute. A tract of land devoted to the breeding, grazing, shearing, and lambing of sheep is a farm, as much as a tract that is devoted to the growing of grain or to diversified farming. In short, a tract may be a farm without the aid of a plow. In common parlance, the words farm and ranch are used interchangeably. In Webster's New International Dictionary, a farm is defined as a "plot or tract of land devoted to the raising of domestic or other animals; as, a chicken farm; a fox farm." In *People ex rel. Rodgers v. Caldwell*, 142 Ill. 434, 32 N. E. 691, the word farm in a like statute is defined as "a body of land usually under one ownership devoted to agriculture, either to raising of crops or pasturage, or both." See, also, *Murdock v. Murdock*, 38 Utah 373, 113 Pac. 330; *Morse v. Stanley County*, 26 S. D. 313, 128 N. W. 153; *People ex rel. Tyler v. Scheifley*, 252 Ill. 486, 96 N. E. 890. The obvious intention of the law makers was that livestock should be taxed at the home of the stock, thus recognizing the equity of the home county to have the tax.

The appellant cites *In re Drake*, 114 Fed. 229, and *Commonwealth v. Carmalt*, 2 Binn. (Pa.) 235. In the *Drake* case, the question before the court was whether Drake was a person "engaged chiefly in farming," within the meaning of the exemption clause in the bankruptcy statute. The court defined a farm as "a tract devoted to cultivation under a single control, whether it be large or small, isolated, or made up of many parcels." In the *Carmalt* case, the court said:

"By a farm we mean an indefinite quantity of land, some of which is cultivated. Most farms contain parcels of land applied to different purposes. Some are used for the cultivation of grass, some of grain, and some remain in wood."

These definitions, we apprehend, were intended to be illustrative rather than comprehensive. The word farm, when construed with reference to its context in our statute and so as to effectuate the manifest intention of the law makers, must be held to embrace a farm devoted exclusively to the breeding of stock. This view makes it unnecessary, and in the opinion of the majority of the court, improper, to consider the other questions suggested.

The judgment is affirmed.

Crow, C. J., Chadwick, Ellis, and Main, JJ., concur.