## FARM & CATTLE LOAN CO. vs. FAULKNER, ET AL*
(No. 1208; Jan. 12, 1926; 242 Pac. 415.)

Appeal and Error—Taxation—Seizure of Personalty for Tax— Replevin by Mortgagee—Prima Facie Case—Confusion of Goods.

1.  Where court instructed jury to find appellant's mortgage to be valid and not released, thereby overruling contention of defendant to the contrary, of which no complaint is made, such issue is not presented on appeal.

2.  Comp. St. 1920, § 2842, making tax levied on personalty a perpetual lien thereon, does make tax lien on after-acquired property of taxpayer, and statute is not to be enlarged by construction.

3.  Where taxpayer mortgaged his cattle after assessment for taxes, the county treasurer could not, as against mortgagee, seize any property within mortgage for taxes, un-

less owned by taxpayer at time of levy, and situated in county assessing tax, so as to come within lien of tax, under Comp. St. 1920, § 2842.

4. A defendant in replevin may rely upon several titles under a general denial.

5. When plaintiff in replevin establishes a prima facie title and right to possession of property in controversy, it is incumbent on defendant to show how he came into possession of property.

6. In replevin against county treasurer seizing cattle for delinquent taxes, plaintiff makes a prima facie case by showing his mortgage containing right to immediate possession, which defendant has burden of overcoming.

7. In replevin against county treasurer seizing mortgaged cattle for taxes under distraint warrant, prima facie case of mortgagee with right to immediate possession is not met on showing only that property of mortgagor was assessed, without indicating character of property or whether it was owned by taxpayer and in county at time of tax levy.

8. If property of the class assessed by county treasurer under distraint warrant is shown to have been assessed in county at time of tax levy, the tax on such class would be a lien against every parcel of property belonging to that class, and would justify seizure for amount due of any part of it found in county.

9. Though after-acquired property is not subject to lien of taxes, the prior right of a mortgagee to such property may be lost if he permits it to be mingled with other property of like kind as assessed, so as to be indistinguishable therefrom, and burden of separating property or to show that property seized was in fact part of property assessed would not be on county treasurer seizing property under distraint warrant.

10. In replevin against county treasurer seizing property to satisfy delinquent taxes, prima facie case made by mortgagee with immediate right to possession is overcome if it is shown that same class of property seized by collector was in fact in sufficient number lawfully assessed at time of tax levy, and burden of producing further evidence would then be on mortgagee.

11. In replevin by mortgagee of cattle seized for taxes, in order that doctrine of confusion of goods may apply, even as shifting burden of evidence on mortgagee to show that

cattle were not in fact assessed, there must be an actual confusion; that is, if on assessment cattle are divided into classes, and tax lien extends only to classes, assessment on one class would in no way show a lien on another class.

12.   In view of Comp. St. 1920, § 2757, and Const. art. 15, § 10, to overcome prima facie case in replevin, made by mortgagee of cattle with immediate right to possession, a tax collector distraining cattle, under lien for taxes created by section 2842, must at least show that a lawful assessment was made against cattle of mortgagor in sufficient number to satisfy tax lien.

*NOTE—See Headnotes (1) 3 C. J. p. 843 n. 67; (2) 37 Cyc. p. 1147 n. 49; (3) 37 Cyc. pp. 1139 n. 3; 1140 n. 12, 13, 14; 1141 n. 17; 1229 n. 32, 33; 1238 n. 19; (4, 5) 34 Cyc. p. 1414 n. 71; 1495 n. 66; 1503 n. 23; (6, 7) 37 Cyc. p. 1279 n. 13 New; (8, 9) 12 C. J. p. 497 n. 79, 80; 37 Cyc. pp. 1141 n. 17; 1145 n. 40 New; 1237 n. 4; (10) 37 Cyc. p. 1279 n. 13 New; (11) 37 Cyc. p. 1279 n. 13 New; (12) 37 Cyc. p. 1279 n. 13 New.

APPEAL from District Court, Weston County; HARRY P. ILSLEY, Judge.

Action in replevin by Farm & Cattle Loan Company against Chaloe Faulkner, as County Treasurer of Weston County and another. There was judgment for defendants and plaintiff appeals.

*E. C. Raymond, T. W. LaFleiche* and *John R. Russell* for appellant.

The trial court held that the chattel mortgage was a valid lien upon the property; it developed upon respondents to establish a tax lien under Section 2842 C. S.; Lobban vs. State, 64 Pac. 82; 1 S. Dak. 539; Lee vs. Stanard, 61 Pac. 234; Bazar Co. vs. McNichols (Colo.), 56 Pac. 672; the cattle taken under the writ of replevin were not in Weston County in 1921; they were in fact purchased in New Mexico in the spring of 1922; therefore the attempt to tax them for 1921 was void; filing of an affidavit of prejudice and for a change of judge disqualifies the judge forthwith; verdict should be vacated for prejudice or

passion; Cawley vs. City Ry. Co., 77 N. W. 169; Turnbull
vs. Rivers, 15 Amer. Dec. 622; there was no evidence to
show that the cattle were in Weston County in 1921. The
verdict is not sustained by evidence and should have been
vacated; Clinch vs. Kinova, 15 So. 427; Pepperill vs. City
Park, 45 Pac. 743; City vs. Shropshire, 37 S. E. 168;
Hickey vs. Ry. Co., 26 N. W. 112; verdicts based upon
conjecture cannot stand; Pleasance vs. Fant, 22 Wall.
116; the verdict should have been for appellant; Christy
vs. Holmes, 57 Ind. 314; Backus vs. Clark, 83 Am. Dec.
437; Moore vs. Mo. Pac. Ry. Co., 28 Mo. App. 622; Bir-
mingham vs. Bradley, 23 So. 53; Phillips vs. Laughlin,
58 Atl. 64; I. & G. M. Ry. Co. vs. Moore, 41 So. 70; Carroll
vs. Texarkana Co., 143 S. W. 586; Koenig vs. Co., 122 Pac.
16; Clarke vs. Ry. Co., 87 Atl. 206 Wardlaw vs. Frederick
(Ga.), 79 S. E. 523.

*H. Glenn Kinsley* and *James A. Greenwood* for defend-
ants and respondents.

The cattle were sold under a tax lien levied in 1921.
Plaintiff failed to show that its lien attached to the par-
ticular cattle in question and therefore failed to show
right of possession. The cattle sold for taxes, and are not
the cattle or any part thereof, described in the chattel
mortgage. Plaintiff had no mortgage on the cattle in con-
troversy in 1921, nor at any time; Cheesman vs. Fenton,
13 Wyo. 436 Kelly vs. Lewis (Colo.), 88 Pac. 388; the evi-
dence showed that the cattle sold by defendant, Faulkner,
had been seen in Weston County in the fall of 1921. Rep-
resentatives of the plaintiff company were endeavoring
to avoid the payment of taxes on these cattle, as shown
by the evidence; the verdict is supported by the evidence
and should be sustained.

*John R. Russell* and *E. C. Raymond* in reply.

The answer of defendant Quest, admits that 60 head of
cattle with the same brands as the property described in
the mortgage, were seized and sold by the County Treas-

urer.  This disposes of the question of identity.  It was proven that the cattle were shipped to Weston County and it was shown that they were all rebranded after their arrival.  Live stock is described by brands in this state. The cattle were received in Wyoming after the mortgage had been executed.  It was unnecessary to offer evidence of identity, for the reason that they were fully identified by the pleadings; Adamson vs. Fagan, 47 N. W. 56; Fordyce vs. Neal, 40 Mich. 705; Adams Co. vs. So. Omaha, 123 Fed. 641; plaintiff paid its taxes in Weston County. The judgment should be reversed, with directions to render a judgment for plaintiff.

BLUME, Justice.

This is an action in replevin brought on December 18, 1922, by the Farm and Cattle Loan Company, a South Dakota corporation, against the County Treasurer of Weston county, and S. M. Quest, to recover 60 head of yearling cattle seized by the County Treasurer of Weston county under a distraint warrant to satisfy some taxes levied upon the property of E. Roy Townsend in 1921, and which said cattle were sold by said treasurer to said Quest.  The case was tried to a jury, which returned a verdict in favor of the defendants.  Judgment was entered upon the verdict and plaintiff appeals.

It is shown by the petition and admitted in the answer that said Townsend, a resident of Lawrence county, South Dakota, borrowed of appellant the sum of $85,000 on May 2, 1922.  He made a promissory note for that amount payable November 2, 1922, and in order to secure said note, executed to appellant a chattel mortgage upon 1269 head of cattle, consisting of 165 head of stock cows, two to six years old, 400 head of steers, three to four years old, 630 head of yearling heifers and steers, 70 head of calves and 4 head of bulls.  The brands are given in signs, but, as interpreted in the testimony, is given in the mortgage as follows:

"All branded quarter circle J, E reverse R, T on left side and P milliron on right side."

By the terms of the said mortgage the appellant was entitled to the immediate possession of the property described in the mortgage at the time of the commencement of the action herein, as against the mortgagor, and it made a demand on respondents for the return of said property, before starting this suit.

The cattle of Townsend, it seems, ranged and had ranged partially in South Dakota and partially in Weston county in this state. During the year 1921, the property of Townsend in said Weston county was assessed for taxation. It does not appear what the property was. The total tax levied was the sum of $944.42, which was not paid and a penalty of $144.78 had accrued thereon at the time of the commencement of this action. About November 1, 1922, the treasurer of said county seized 60 head of the yearling cattle described in said mortgage, in order to satisfy the amount of said tax and penalty, and on November 11, 1922, sold them at public auction to S. M. Quest for $1500. The appellant claims that these cattle were not included in the assessment above mentioned, that they were not in the state of Wyoming in 1921, but were shipped from New Mexico in May, 1922, and were marked with the "quarter circle J brand" after they came to this state. The testimony shows that 350 yearlings only were so shipped, although 630 yearlings are described in the mortgage, leaving 280 yearlings which were not so shipped, and it is the contention of the respondents that the 60 head of cattle seized as aforesaid were part of the 280 head that were in Weston county in 1921 and were included in the assessment above mentioned. There is, however, no direct testimony in the record showing that the 280 head of cattle were in said county during that year.

The main witness on behalf of appellant was Burt War-ren, who testified definitely that the 60 head of cattle seized by the county treasurer above mentioned were part of the cattle shipped from New Mexico in the month of May, 1922. Other testimony in the record tends to show the same fact. The cattle so shipped are described as "Southern cattle." Some witnesses on behalf of respond-ents stated that there were some "native" cattle among those seized by the county treasurer, without stating how many. Other witnesses testified that they saw some calves and cows bearing the "quarter circle J" brand in Weston county during the year 1921; further that they saw some yearlings with that brand in said county in the spring of 1922, but before the month of May. The number of them, however, is not attempted to be fixed in either case. Burt Warren stated that, aside from the yearlings shipped from New Mexico, there were only five or six head of Town-send's yearlings in said county in 1922, but that these were not the cattle seized by the county treasurer, and it may be that the calves seen by the other witnesses in 1921 and the yearlings in 1922 were the same cattle mentioned by Warren. The assessment schedule of Townsend for the year 1921 was not introduced in evidence, nor, as heretofore stated, is there anything in the record to show what property of his was assessed in Weston county dur-ing that year. Many of the facts here set out should not be further discussed by us at this time in the view that we take of the case, as it stands at present, but we have set them out in order to show that we have borne them in mind in arriving at our conclusion.

1. It appears from the record that the note and mort-gage hereinbefore mentioned were renewed in the latter part of December, 1922, and that the first mortgage was released shortly thereafter. Respondent accordingly claimed in the court below, and make the claim here, that appellant had no interest in the cattle seized, so as to

authorize it to bring this action.  Much testimony was introduced by which it was sought to show that the release was made and filed as a result of trickery of some officers of Weston county.  The court instructed the jury that the mortgage of May 2, 1922, was a valid, subsisting lien against the property in controversy at the time of the commencement of this action and had never, as a matter of law, been released.  The trial court, therefore, over-ruled the foregoing contention of respondents.  No complaint of that action of the court is made and the point referred to is, accordingly, not before us.

2.  A number of errors are assigned herein, but we think that it is not necessary to consider any of them ex-cept the one that the verdict and judgment are not sustained by the evidence.  By section 2842, W. C. S. 1920, ''all taxes levied upon personal property of any kind whatsoever, shall be and remain a perpetual lien upon the property so levied upon until the whole of such tax is paid.''  There is no provision that the tax is a lien on any after-acquired personal property of the tax payer, and the statute giving a lien is not to be enlarged by construction.  Lobban v. State, 9 Wyo. 377, 64 P. 82.  The county treasurer might doubtless have seized any property belonging to Townsend to satisfy the tax levied in 1921, so long as he only was the party interested therein, (37 Cyc. 1229, 1239) but that situation changed when he gave a mortgage on the cattle in May, 1922.  Thereafter the county treasurer could not, as against the mortgagee, seize any property embraced within the mortgage, unless it was part of the property upon which the taxes became a lien in 1921.  Chicago Bazaar Co. v. McNichols, 13 Colo. App. 154, 56 Pac. 672; Lee v. Stanard, 15 Colo. App. 101, 61 Pac. 234; 37 Cyc. 1140.  In 37 Cyc. 1140 it is said:

''As a general rule the tax is a lien only on the specific piece or article or aggregate collection of property upon

which it is assessed, and binds only such property as is owned by the tax payer at the time the taxes become delinquent or the lien attaches, "and only such property as is situated within the county or other taxing district."

See also Yarbrough Bros. Hdwe. Co. v. Phillips, 209 Ala. 341, 96 So. 414. In the case of Board of Commissioners v. Shaffner, 12 Wyo. 177, 74 Pac. 88, 109 Am. St. Rep. 971, this court held that taxes levied upon personal property did not become a lien upon real estate subsequently acquired by the tax payer, and the same rule doubtless applies to personal property subsequently acquired, so that unless the 60 head of cattle seized and sold by the county treasurer in this case were the property of Townsend, situated in Weston county, in 1921, they would not be liable as against the mortgagee, for any taxes assessed against Townsend in that year, unless possibly, under the doctrine of confusion of goods hereinafter mentioned.

Now counsel for respondents contend that the appellant must recover on the strength of its own title and not upon the weakness of that of its adversary. The principle is, of course, correct, and elementary, but we fail to see its application here. It is admitted that the legal title to the property in controversy was in Townsend, and appellants have shown an equitable title derived from him, together with the immediate right of possession thereunder. Why is that not a sufficient title in order to enable appellant to maintain this action? The truth is that counsel for respondents conceive the principle above mentioned to be much more far reaching, and they contend that appellant must show not only its own title, but must further show that respondent's title is not good, or, at least, that it is inferior to that of appellant. The unreasonableness of that position must become apparent upon a moment's consideration.

A defendant in replevin may rely upon several titles, if he sees fit to do so, and, as is generally held, may do so

under a general denial. 34 Cyc. 1495. He may claim for
instance under a tax title, under a purchase and under
other titles. If counsel's position is correct, the fact that
in such case a plaintiff in replevin might prove his title
to be superior to defendant's tax title is but a part of
the burden that he would be compelled to meet; and he
must go further and prove his title to be superior to every
other title under which a defendant might deem fit to
claim. That is not the law. On the contrary, the general
rule is that when a plaintiff in replevin establishes a
prima facie title and right to the possession of property in
controversy, it is incumbent on defendant to show how
he came into possession of it. 34 Cyc. 1503; Bame v.
Seykora, 77 Hun. 529, 29 N. Y. Supp. 931; Kebabian v.
Adams Express Co., 27 R. I. 564, 65 A. 271. Thus it was
said in the first of these cases:

"The plaintiff established a prima facie title and the
right to the possession of the property in question against
every one except a bona fide purchaser. There is no evi-
dence in the case to show how the defendant came into the
possession of the property, whether he stole it, took it for
a debt or purchased it. Plaintiff having established a
prima facie title and right to the possession of the prop-
erty, it is incumbent upon the defendant to show how he
came into possession of it."

In the second of the foregoing cases it is said:

"The plaintiff having proved his ownership and right
to possession, has made a prima facie case. The burden
of proving the liens set up by the pleas is upon the de-
fendant."

The principle here mentioned has been applied in tax
cases. Thus it was said in the case of Lee v. Stanard,
supra, that the right which a mortgagee has in property
levied upon for taxes appears from the mortgage; that

when he has exhibited that, he makes a prima facie case and it then devolves upon the county to show wherein its claim is superior to the lien of the mortgagee. And in the case of O'Sullivan v. Blakely, 54 Ore. 551, 104 Pac. 297, the court said:

"A tax warrant, legal in form, proceeding from a court or an officer having authority to issue it, and which on its face contains nothing fairly to disclose to any one that it was put forth without sanction of law, will protect the officer whose duty it is to execute such process to the same extent as if it were valid; but it will not enable such official to build up a title, either general or special, to property seized by virtue of the mandate. Cooley, Tax'n (2d Ed.) 801. When, therefore, a title to property is asserted by an officer, who undertakes to justify his execution of a tax warrant, he must, as in cases of seizure under an attachment or under an execution, show his authority, the regularity of the proceedings under which he acts, and that the property levied upon, to satisfy the ratable measure of the sovereign's exaction, belongs to the person named in the warrant. Shinn, Rep. sec. 538. The sale of property by a tax collector, for the payment of the tribute which the law demands, is an in invitum proceeding, the regularity of which must be established by the officer who attempts to uphold a title pursuant to the sequestration."

The principle deducible from these authorities is, we think, that when appellant showed its mortgage, it made a prima facie case, and the burden to overcome it devolved upon the respondents. We think it clear upon the record before us that this prima case of appellant has not been met. The assessment schedule was not shown. It does not appear whether the tax was levied on real or personal property. There is no evidence in the record that cattle—let alone calves which would have been year-

lings in 1922—were assessed for taxation. We cannot presume that simply because the "property" of Townsend in Weston county was assessed, that the assessment included personal property, or property of the same class as that seized by the county treasurer under the distraint warrant. Respondents have accordingly shown no right whatever to the cattle seized as against the mortgagee, have not met the prima facie case made by appellant, and the case must accordingly be reversed. Lest it be thought, however, that too great a burden is placed upon the counties in enforcing taxes, and in order that our decision may not be misunderstood, we deem it best to give some of our views on other matters that have a bearing, or possible bearing, in the future trial of this case.

Were it shown that property of the class seized by the county treasurer was assessed in Weston county in 1921, then, as discussed more fully hereafter, the tax levied on that class would have been a lien against every piece and parcel of property belonging to that class, and the treasurer would have been justified in seizing any part of it found in the county, in order to satisfy the amount due thereon. The property acquired in 1922 would not, as heretofore stated, be subject to the lien of the taxes of 1921, but the prior right of a mortgagee to such after-acquired property may be lost, if he permits it to be mingled with other property of like kind that was assessed, so as to be indistinguishable therefrom, and no burden to separate the one from the other, or to show that every part of the property seized was in fact a portion of the property assessed, should, in such case, be on the county treasurer or the party claiming under him; the responsibility for the confusion or mingling of the property, should, in other words, not be on them. In the case of Mills v. County of Thurston, 16 Wash. 378, 47 Pac. 759, it appears that plaintiff had bought a stock of goods in 1896 on which taxes had been assessed in 1895. The court among other things says:

"But it is contended that against these plaintiffs the lien could only be enforced, if at all, upon that part remaining of the stock as it existed when it was subject to assessment, viz, the first day of April, 1895, and that since that time goods had been continually sold therefrom, and other goods added to the stock and intermingled therewith, and that they could not be segregated. It was not alleged in the complaint, however, that there was not enough remaining of the original stock from which to make the amount of the tax, penalties, etc. And furthermore a sufficient answer to this contention is furnished by the well-established rule that the loss in such case, if any, shall fall upon the party who caused the goods to be mixed, and in this instance it was by Frost and his successors, the plaintiffs; consequently, any of the goods can be taken for the tax."

In the case of Robinson v. Youngblood, 54 Ind. App. 669, 103 N. E. 347, it was held that where the purchaser of goods, burdened with a lien for taxes assessed against the seller, mingled other goods not affected by such lien with the goods so purchased, so that the tax collector is unable in the exercise of reasonable care to distinguish them from the goods subject to the lien, such collector may levy on sufficient goods to satisfy the lien; further that it is the duty of the owner in such case, if he wishes to prevent the sale of the goods not affected by such lien, to point them out and demand that they be not sold; that otherwise the officer may lawfully sell the same in satisfaction of such lien. In the case of The First National Bank v. Linderstruth, 79 Md. 136, 28 A. 807, 47 Am. St. Rep. 366, it was held that where, with the knowledge of the mortgagee and for its benefit, the after-acquired goods have been so intermingled with the property embraced in the mortgage as not to be distinguishable from the latter, a judgment creditor of the mortgagor may lawfully levy upon and sell the whole or so much thereof as may be

necessary to satisfy the debt.  In the case of Taylor v.
Jones, 42 N. H. 25, it was held that in case of intermingling
of goods, an officer may attach the property of the debtor
until the property that is exempt from the attachment is
claimed and identified.  In the case of Wilson v. Lane,
33 N. H. 466, it is held that an officer may attach the
goods of a debtor, notwithstanding that they are so mixed
with the goods of another as to be undistinguishable; that
it is his duty to make reasonable inquiry to ascertain the
goods of the debtor; if he still is unable to distinguish
them, he may retain the whole until the owner identifies
the articles belonging to him and points them out to the
officer and requests him to return them.  Similar is the
holding in the case of Shumway v. Rutter, 8 Pickering 443,
19 Am. Dec. 340, and Hamilton and Robinson v. Rogers,
8 Md. 301, 321.  A general discussion of the subject of
confusion of goods, relating to the matter at hand, is
found in 12 C. J. 496 and 497.

We have cited these cases mainly for the purpose of
showing that the responsibility for any mingling of like
property should not, in a case like that at bar, be on the
tax collector.  If, in other words, it should be shown that
the same class of property seized by the collector was in
fact, in sufficient amount or number, lawfully assessed in
1921, then the respondents herein should be held to have
overcome the prima facie case made by the appellants,
and if nothing more, the burden to produce further evi-
dence should then shift back to the appellant.  What, if
any, further bearing the doctrine of confusion of goods
might have upon the case cannot properly be decided at
this time.  We might add that a confusion of goods ap-
peared in Chicago Bazaar Co. v. McNichols, supra, where
a stock of merchandise had been assessed, but the court
held that after-acquired property could not be held for
any tax against the stock, without, however, mentioning
the doctrine referred to.  The question of the burden of

the evidence did not arise. Lee v. Stanard, supra, may possibly be not altogether in accord with what we have said, and goes, possibly, somewhat farther in the requirement of proof on the part of the tax collector than we think is proper.

In order, of course, that the doctrine of confusion of goods, even in so far as the shifting of the burden of the evidence is concerned, may have any application, there must be an actual confusion. If a tax lien extends only to classes or subclasses, and vehicles, for instance, are assessed, the tax for which is not a lien on cattle, it is clear that to show such assessment for vehicles would in no way show a lien on cattle. So if in making an assessment, cattle are divided into classes, and cows constitute one class and yearlings another, and the tax lien extends only to classes, it is clear that to show an assessment for cows would in no way show a lien on yearlings. And in neither case could the doctrine of confusion of goods have any application. If, on the other hand, the tax lien extends to personal property indiscriminately, and the property is not assessed by classes but merely as personal property, a tax collector would be unable to tell on what property of the tax payer the tax was assessed and he would be justified, in the first instance at least, in seizing any personal property of the tax payer in order to satisfy the lien. So again, if cattle are assessed as a general class, and the tax lien exists on that class, the tax collector could not know on what particular part of the tax payer's cattle the tax was assessed, and he would be justified, in the first instance at least, to seize any of the cattle in order to satisfy a delinquent tax. And if, in either case, any after-acquired property is mingled with the property assessed by consent, for example of the mortgagee thereof, the burden to separate such after-acquired property and show the exemption from the tax lien would be on the mortgagee, as required by the doctrine of confusion of

goods. It is clear, therefore, that the extent and scope of the tax lien given by section 2842, W. C. S. 1920, must be settled, before it can be determined what showing must, in a case like that at bar, be made by the tax collector in order that the burden of any further showing be cast upon the mortgagee.

It is said in 37 Cyc. 1141, that when the statute gives a lien on personal property, it generally attaches to all the taxable personalty of the owner, and not separately to each item or piece of property for the tax assessed against that article. Whether that is true or not depends, however, upon the statute. The principle above stated is true in Nebraska. But there is a statute in that state which specifically provides that the tax assessed shall be lien, not upon the property only that is assessed, but broadly upon the "property of the person assessed." Hill v. Palmer, 32 Neb. 632, 49 N. W. 718. A similar statute is found in other states. See Porter v. County, 77 Wash. 299, 137 Pac. 466; Minneapolis Threshing Machine Co. v. Roberts County, 34 S. D. 498, 149 N. W. 163, L. R. A. 1915, D. 886. In other jurisdictions, on the other hand, the tax lien is confined to certain classes of property; that is to say the tax levied upon a definite class of personal property is a lien only upon the property embraced within that class, but is not a lien upon the property embraced within any other class. Advance Thresher Co. v. Beck, 21 N. D. 55, 128 N. W. 315; Ann. Cas. 1913b 517; First National Bank v. Kelly, 36 N. D. 546, 162 N. W. 901.

In the case of Hamilton v. His Creditors, 41 La. Ann. 1035, 25 So. 965, the city of New Orleans claimed a lien on counters and fixtures for taxes assessed against a stock of merchandise. The court denied the lien, saying in part:

"It is true, as he (the counsel of the city) says, that article 233 of the constitution mentions only movables and immovables, as general divisions of property for purposes

of taxation, but it does not preclude subdivisions such as
are necessary to make as assessment intelligible.  And the
very bill upon which the opponent sues subdivides mov-
able property as follows, to wit:  "Horses, cows, etc.;
vehicles; merchandise or stock in trade;"  *   *   *
It would hardly be claimed that, upon a bill containing
such an enumeration, an assessment upon "horses, cows,
etc.," would entitle the city to a privilege upon the pro-
ceeds of "vehicles," or that an assessment upon "dia-
monds, jewelry, etc.," would apply to "bonds of all
kinds;" nor, unless we distort the meaning of the very
commonplace words "merchandise or stock in trade," do
we think that they could be made to apply to either
"counters, fixtures, or wooden partitions."

In the case of Bridewell v. Morton, 46 Ark. 73, the
court in considering the question as to how far the tax
lien should extend, refers to the various classes mentioned
in the assessment roll, and that the total valuation of the
personal property and the aggregate only of the personal
taxes is shown on the tax list.  The court then proceeds to
say:

"If we are to regard this sum as the taxes assessed
upon the personal property as a whole, then the lien for
the whole tax would extend to each item of property in
any given list.  But this construction would burden per-
sonal property with secret liens to an extent to be ab-
horred, and would be a restraint upon the free exchange
and alienation of personal property that ought not to be
drawn from the statute, when the meaning is not clearly
manifested.  We are inclined to the view that the amount
is assessed in gross by the clerk for the convenience of the
collector merely in collecting and receipting for taxes in
the ordinary mode.  Property is taxed according to its
value by a uniform rate, and the amount of taxes assessed
upon any particular piece of property when its value is

shown, is found by multiplying the value by the rates of taxation. If then the taxes are a lien upon the property as it is assessed or valued, as seems to be contemplated in the second provision last above quoted, we must look to the *assessment of the property* for the extent of the lien. As each class, whether comprised of one or more articles or items, is valued as a whole, the taxes assessed upon this value are the extent of the lien or charge upon the class; but the taxes being assessed upon it as a whole, each several part is liable in solido for the taxes of the class to which it belongs, just as they would be if all were included in a mortgage or condemned by decree of court.''

Chicago Bazaar Co. v. McNichols, supra, and Lee v. Stanard, supra, were decided under statutes nearly identical with section 2842, W. C. S. 1920, the statute reading as follows:

''All taxes levied or assessed upon personal property of any kind whatsoever shall be and remain a perpetual lien upon the property so levied upon, until the whole amount of such tax is paid.''

It was said in both cases that the lien embraces only the specific property on which the tax was assessed, but the question of classification of property did not arise in these cases, and it is not clear what the court means by ''specific property.'' It can hardly be that the court meant to go to the extent of holding that a tax assessed against a class or sub-class of property, no matter how small, must still be apportioned, and that only the proper proportion of the tax is a lien against a specific parcel of the property.

Section 2757, W. C. S. 1920, classifies the various kinds of property assessed for taxation and specifies horses and neat cattle, mules, asses, sheep, swine, goats, musical instruments, vehicles, etc. Under section 10 of article 15

of the constitution, the state board of equalization must annually fix the valuation for the assessment of live stock. It is doubtless true that said board cannot properly fix any just valuation thereon without classifying the live stock, and subdividing cattle, for instance, into various classes. That, in fact, as shown by the public records of the board, is done. Whether or not that classification is observed by the various assessors in the state, we do not know. Nor is it, perhaps, important here, except in aiding in the interpretation of the provision of section 2842, supra, that the taxes levied upon the different kinds of personal property shall be a perpetual lien "upon the property so levied upon." While we think that the lien of the tax upon one class of personal property is not a lien upon another class of personal property, as these classes are specified in section 2757 supra, the question as to whether the lien is still more confined, is too important to be determined without full presentation and argument thereof. Hence while in this case, the county should at least have shown that a lawful assessment was duly made against the cattle of Townsend (and in sufficient number), we are leaving undetermined the question as to whether it should also have shown that cattle of the same kind seized by the county treasurer, as distinguished from cattle generally, were assessed for taxation in 1921, in order to overcome the prima facie case made by the appellants in the manner herein indicated, and in order to make the doctrine of confusion of goods applicable.

The judgment of the trial court is accordingly reversed, and the case remanded for a new trial.

*Reversed and Remanded.*

POTTER, C. J., and KIMBALL, J., concur.