Argued at Pendleton May 7; reversed July 30, 1935

# OWENS *v.* OREGON LIVESTOCK LOAN COMPANY ET AL.

### (47 P. (2d) 963)

*Loyal H. McCarthy*, of Portland, for appellant.

*T. Leland Brown*, District Attorney, of The Dalles, for respondents.

ROSSMAN, J. The facts are: April 22, 1930, five individuals named Fargher made and delivered to Oregon Livestock Loan Company 13 promissory notes aggregating $30,500, payable to that corporation October 24, 1930. Payment of the notes was secured by a chattel mortgage which subjected to its lien several thousand sheep, their increases, 30 horses, a quantity of wool, a growing crop and some farm machinery, all located in Wasco county and owned by the Farghers. The mortgage was properly recorded. The mortgagee sold all except one of the notes. The plaintiff is the owner of two of the notes and the assignee of several others. The notes he possesses total $19,750. At the time of the sale of each note the loan company delivered to the purchaser a declaration of trust. The right of the plaintiff to maintain this suit is not questioned. November 12, 1930, the Farghers delivered to the loan company a large quantity of property which apparently included all of the mortgaged property then in their possession. March 1, 1933, this suit was instituted. May 1, 1933, after the sheriff of Wasco county, under

the provisions of an interlocutory decree, had taken possession of the property pointed out by the plaintiff, he then announced an intention to hold it for unpaid personal property taxes assessed during the years 1927, 1928, 1929 and 1930 upon property belonging to the Farghers, and for unpaid personal property taxes assessed in 1931, 1932 and 1933 upon property of the loan company. He claimed that the property he had seized was the same property which had been assessed for those taxes. Thereupon, by stipulation, he was made a party defendant in this suit so that the claim thus asserted could be adjudicated. Later, pursuant to further stipulation, the property was sold and the amount of the delinquent taxes, that is, $2,180.10, was deposited with the clerk of the court to abide the outcome of this suit. The issues before us concern the sheep only.

The evidence adduced upon the trial does not indicate that all of the sheep which the sheriff seized belonged to the Farghers in 1927, 1928, 1929 or 1930 when the personal property taxes were assessed against them, nor that they belonged to the loan company in 1931, 1932 and 1933 when the personal property taxes were assessed against that company. Respondents' brief states the situation thus: "The particular band of sheep taken into possession by the sheriff from the Oregon Livestock Loan Company was the same flock of sheep (excepting natural losses and changes occurring in the ordinary course of business) assessed and taxed by Wasco County, Oregon, to A. W. Fargher and later to the Oregon Livestock Loan Company, and this company had taken over into its possession the entire Fargher sheep business which had been conducted many years within Wasco County, Oregon, by Fargher." It is clear that many changes occurred in

the flock in the above period of six years or more through death, births, sales and purchases. Very few, if any, of the sheep which were in existence in 1927 could have been in existence in 1933. The circuit court found that the Farghers' delivery to the loan company of the property then in their possession "was an accord and satisfaction of the indebtedness" from the Farghers to the loan company. This conclusion is not attacked upon appeal and, hence, will be deemed proper by us.

The plaintiff argues that (1) only the property assessed in 1927 is liable for the taxes imposed in that year, and that similarly only the property assessed for the taxes in each succeeding year is liable for the taxes imposed in that year; (2) the burden of proof rests upon the county to prove that the property sold by the sheriff was the property assessed for the taxes; (3) the county failed to prove that the property seized was the property assessed; and (4) the lien of the loan company's mortgage was superior to the lien for the taxes. The county claims that the property assessed was an entity or in the nature of a business unit and that since the property which came into the sheriff's possession was the property which the Farghers possessed in 1927, except for changes arising out of death, births, sales and replacements, it is liable for the taxes assessed in 1927 and the succeeding years. The county also claims that a tax lien prevails over a chattel mortgage lien.

Section 69-722, Oregon Code 1930, provides:

"The taxes assessed upon personal property shall be a lien upon all the personal property of the person assessed from and after the date when such assessment is made, and no sale or transfer of personal property shall in any way affect the lien for such taxes upon such

property. * * * Such liens shall have priority to and be fully paid and satisfied before any and every judgment, mortgage or other lien or claim whatsoever placed of record subsequent to the date when such personal property tax is charged against said real property, except * * *.''

Since none of the exceptions enumerated in the statute are applicable to the facts before us, we shall quote no further from the statute.

Section 69-721, Oregon Code 1930, provides:

''On or as soon as practicable after the fifth day of November of each year the tax collector shall proceed to collect all taxes upon personal property, which have not been paid before said day, together with interest and penalty after the same has attached thereon. He shall levy upon sufficient goods and chattels belonging to the person, firm or corporation or association charged with such taxes, if the same can be found in the county, by taking them into his possession, to pay such delinquent taxes, together with interest, accruing interest, penalties and other lawful charges, and shall immediately advertise such goods and chattels for sale by * * *. Whenever after delinquency, in the opinion of the tax collector, it becomes necessary to charge the tax on personal property against real property in order that such personal property tax may be collected, such tax collector shall select for the purpose some particular tract or lots of real property owned by the person, firm, corporation or association owing such personal property tax, and shall note upon the tax roll opposite such tract or lots the said tax on personal property, and said tax shall be a lien on such real property and * * *''

This statute was amended by 1933 Session Laws, chap. 446, § 13, but the amendment is immaterial to our present purposes. Section 69-726 provides that personal property taxes are a debt of the owner of the property.

The part of § 69-722 above quoted was enacted in 1917. See 1917 Session Laws, chap. 407, § 1.

In 1903 the Washington legislature enacted the following statute:

"The taxes assessed upon personal property shall be a lien upon all the real and personal property of the person assessed, from and after the date upon which such assessment is made, and no sale or transfer of either real or personal property shall in any way affect the lien for such taxes upon such property."

See 1903 Washington Session Laws, chap. 59, § 3. It will be observed that the only difference between the Washington enactment and the first sentence of the quoted portions of § 69-722, Oregon Code 1930, is the fact that the Washington statute employs the term real property alongside of the term personal property as it makes provision for a tax lien. The Washington statutes make provision for distraint of personal property for the satisfaction of delinquent personal property taxes. See § 9223, Remington & Ballinger's Code and Statutes of Washington. These provisions are not substantially dissimilar from our seizure statute above quoted. The Washington statutes also make provision whereby a personal property tax may become a lien upon real property antedating existing liens upon the latter. See § 9245, Remington & Ballinger's Code. This provision is not dissimilar from our statute which accomplishes the same purpose.

Several months before the enactment of 1917 Session Laws, chap. 407, the Washington supreme court announced its decision entitled *Scandinavian American Bank v. King County*, 92 Wash. 650 (159 P. 786). The issue in that case was whether a delinquent personal property tax is a lien upon the real property owned by

the tax debtor at the time the tax was levied. In announcing its decision, the court stated:

"Manifestly the lien for delinquent personal taxes does not attach to real estate prior to the time specific real property is selected by the county treasurer, and he has charged it by proper entry upon the tax rolls, and then only when the property is owned by the person owing the delinquent personal property tax  *  *  *. The very terms of the statute compel the conclusion that the tax is not a lien generally upon all property, but only upon such as may be thereafter specifically selected and charged  *  *  *. But if we grant that a lien does exist, the county is in no better position for up to the time of selection and charging the lien is floating and inchoate."

Since the pronouncement of that decision the Washington court has adhered strictly to the principle that until other property is selected by the tax collector the only property liable for a personal property tax is the property assessed. In the meantime, the lien is "floating and inchoate" as to all other property of the tax debtor. A recent decision so holding is *Pennington v. Yakima County,* 127 Wash. 538 (221 P. 326), wherein the facts were: The plaintiff took a chattel mortgage upon three automobiles April 19, 1920, and on May 3, 1922, the sheriff seized them, at the plaintiff's request, to foreclose the mortgage. Six days thereafter he distrained the automobiles for taxes assessed against the mortgagor for the years 1920 to 1922 inclusive. The total tax was $579.73 and of this sum only $223.94 had been assessed against the automobiles. The court, in holding that the automobiles were liable for only $223.94, declared:

"This floating lien against all the personal property belonging to the person assessed, other than the particular property assessed, does not fasten or become a fixed lien until the property is seized by the sheriff

under Sections 11257 and 11258, Rem. Comp. Stat., wherein it is provided that the sheriff shall distrain goods and chattels belonging to the person charged with such taxes. * * *''

And in *Lahn & Simons v. Matzen Woolen Mills,* 149 Wash. 538 (271 P. 830), the court declared:

"A lien for personal taxes is not fixed until distraint. Such lien is the personal obligation of the owner of the chattel. A claim may be enforced as a lien upon the specific chattel assessed, wherever found (except as to stocks of merchandise sold at retail), but in this case the specific property against which this tax was assessed disappeared long prior to the appointment of the receivers. The lien for personal property taxes became fixed against the property only by some appropriate action, and the purchaser at receiver's sale takes the property free from all claims for such taxes."

In *Wilberg v. Yakima County,* 132 Wash. 219 (231 P. 931, 41 A. L. R. 184), the Washington court summarized the effect of its previous holdings into six rules, the sixth of which is:

"If the tax is not collected from the person against whom it is assessed and who owned the personal property at that time, it may be collected from a subsequent owner in whose hands the property may be at the time of the attempted collection; but in order to collect the tax from such person it must originally have been so specifically assessed that it can be traced into the hands of persons against whom the tax is sought to be enforced and there identified as being the same specific property described in the original assessment."

In that case a personal property tax had been assessed against a retail grocery store owned by an individual named Baldoser who had neglected to pay the tax. After his vendee (the plaintiff in the above-entitled case) had acquired ownership of the store, he

installed new fixtures and in the natural course of trade disposed of all of the stock which Baldoser had owned, replacing it with new merchandise. Then the tax collector sought to enforce payment of the tax out of the store as it then existed. The court, in applying to these facts the rule previously quoted, held that the new owner and the property now comprising the store were not liable for the tax.

In *Goodsell v. Spokane County,* 135 Wash. 669 (238 P. 612), the court supplemented the aforementioned six rules by adding two more based upon its previous decisions and its interpretation of the aforementioned statute. We quote them:

"Where there are various pieces of personal property, of unequal value, belonging to A and assessed to him, and such assessment and valuation is of the whole of the property as one lot, and subsequently all of that property comes into the hands of B, then all or any portion of the property found in the latter's hands may be distrained and sold to pay all or any portion of the tax. This rule, for the most part, is based on the case of Mills v. Thurston County, supra [16 Wash. 378 (47 P. 759)]. Where the same kind of property has been likewise assessed and valued, and only a part of it is subsequently sold to B the part so purchased and at the time held by B can not be distrained and sold to pay the whole tax according to the original assessment, but may be sold to pay its just portion thereof, but this rule for obvious reasons, can not be made to apply to a stock of goods, wares and merchandise held for sale and sold at retail in the ordinary course of business."

In that case the facts were that one Hampton owned a gasoline station. During the year 1923 the property comprising his station was assessed as a unit. He neglected to pay the tax and later the plaintiff purchased a portion of the property constituting the sta-

tion. The tax collector then demanded of the plaintiff payment of the entire tax. After offering to pay what he deemed to be the fair share of the tax upon the part of the property which he had purchased the plaintiff instituted a suit to restrain the threatened distraint. In the decision just cited the court held that the plaintiff and the property which he had purchased were not liable for the entire tax but only for the portion justly apportionable to the property plaintiff had bought.

The statute was again construed and applied in *Tacoma Grocery Company v. Pierce County,* 142 Wash. 670 (253 P. 1079). In that case the facts were that the Tacoma Grocery Company had purchased a very substantial portion of the wholesale stock of groceries of the Lindberg Grocery Company. At the time of the purchase the latter concern was delinquent in the payment of the personal property tax assessed upon its stock of merchandise. After the purchase had been completed and before the tax collector sought to collect the tax, the Tacoma Grocery Company disposed of all of the items which it had purchased from the Lindberg company. In holding that the Tacoma company was not liable for this unpaid tax, the court said:

"It has become the settled law of this state that the personal property of a person can in no event be lawfully distrained as was attempted in this case to satisfy a personal property tax charged against another person when the property sought to be distrained never was the property of the person against whom the tax sought to be enforced is charged."

In *Minshull v. Douglas County,* 133 Wash. 650 (234 P. 661), the facts were that on November 16, 1920, one Besel executed a chattel mortgage which described some farm machinery and horses. Later, taxes amounting to $261.36 were assessed against the prop-

erty for the years 1921 to 1923, inclusive. These taxes were delinquent April 7, 1924, when the bank foreclosed its mortgage and sold the property for $2,500. At the time of the foreclosure the tax collector seized the property through a distraint warrant for the above-mentioned unpaid taxes. They were then paid under protest. A suit was then instituted for the recovery of the sums paid. In disposing of that suit after appeal, the court said:

"Under the various statutes and under our own decisions, it is manifest that the personal property tax is a specific lien against the specific property assessed; that the assessed personal property may be followed into the hands of a transferee and the assessed taxes collected. If it may be followed into the hands of a transferee and the tax collected, much more so may it be followed into the hands of a mere encumbrancer, even though the encumbrancer has a contract lien antedating the assessment of the taxes."

The court held that the tax lien was superior to the chattel mortgage lien and that, hence, the taxes paid could not be recovered.

In *Raymond v. King County*, 117 Wash. 343 (201 P. 455), the facts were that the Page & Bolster Shingle Company in 1919 owned some personal property upon which a tax was assessed in the sum of $120.20 which was not paid. October 6, 1920, the company, being adjudged insolvent, was placed in the hands of a receiver. At that time the company possessed 312,000 feet of lumber which had been manufactured in the year 1920, and on December 20, 1920, this lumber was sold to the plaintiff. After the sale the tax collector threatened to distrain this lumber so as to enforce payment of the tax. It will be observed that the lumber was not in existence at the time the tax was assessed upon other

property of the tax debtor. In holding that neither the lumber nor the purchaser was liable for the payment of the tax, the court declared:

"If, to illustrate, a person charged with a tax and owning a specific chattel should sell and deliver the chattel to another, the chattel would not only remain charged with the personal property tax of the seller, but would become immediately charged with the personal property tax of the purchaser; and a like result would follow from all subsequent sales until the chattel could be chargeable with the entire delinquency in the county. It would be to say, moreover, under the rule that a person destroying a chattel on which there is a specific lien becomes personally chargeable with the lien to the value of the property destroyed, that the patrons of an ordinary grocer could be held for the grocer's personal property tax to the extent of their purchases of groceries from him. Effects, such as these, would be intolerable to the business world. It would prevent traffic in personal property. No one, without the most careful research, could purchase from another a specific chattel with the assurance that he was acquiring an unencumbered title thereto, or with the assurance, if he so used the chattel as to put it out of the reach of the tax collector, that he would not thereafter be called to account for the value of the chattel. But we think the statutes themselves show that the contention made misconstrues the legislative intent. The statutes from the earliest time have contained provisions similar to the provision now in question, declaring that the taxes assessed upon personal property shall be a lien upon all of the real and personal property of the person assessed, yet the statutes declaring the lien have uniformly provided that any levy upon personal property to enforce the lien shall be made upon the personal property of the person charged with the tax."

It will be observed from the above decisions that only the property assessed is liable for payment of the

tax unless the tax collector distrains other property. But his distraint is ineffective unless the property he seizes belongs to the tax debtor at the time of the distraint. The fact that it belonged to the tax debtor at the time the tax was levied is immaterial if it now belongs to some one else.

While we have not made an exhaustive search, we have been unable to find any other statute as similar to § 69-722, Oregon Code 1930, as is the Washington statute above quoted. Moreover, the balance of the Washington legislation upon the subject of delinquent personal property taxes whereby distraints may be levied and the tax may become a lien upon real property is also substantially similar to our laws. Other courts besides the Washington court have expressed fears concerning the injustice which might arise if personal property is subject to the hidden lien of delinquent taxes as it passes about in the channels of trade. For instance, in *Maish v. Bird,* 22 Fed. 180, the court, referring to the Iowa personal property tax statute, said:

"It will not be claimed that personal property, sold by the tax debtor after the taxes have become delinquent, but before any distraint thereof has been made, is subject to be seized in the hands of a purchaser and subjected to the payment of the tax. If this were the rule, then every one who buys goods in the ordinary way of trade of a merchant can not know whether his title is a perfect one or not, except by ascertaining whether his vendor has paid all taxes assessed against him. If there are taxes due, then, under such a rule, the purchaser would take subject to the right of the county treasurer to seize the goods and sell them for the unpaid taxes. Certainly no such burden of risk is placed upon the purchaser by the statutes of Iowa, and in the absence of express statutory provisions so declaring, courts are not justified

in adopting a rule which would so greatly interfere with the ordinary business affairs of the community.''

See also *Bridewill v. Morton,* 46 Ark. 73.

We do not believe that the Washington decisions in any way conflict with the principles of law stated and applied in *McKennon v. Warnick,* 115 Or. 163 (236 P. 1051), cited by defendants; nor do we find sufficient disparity of views between the Washington decisions and the other authorities cited by the defendants, when differences of statutory provisions are considered, to warrant a review of those decisions herein.

We believe that the Washington decisions have placed a very practical construction upon the statute of that state. The construction permits the transfer of personal property in the ordinary course of business and yet enables a reasonably diligent tax collector to collect all taxes assessed. The decisions appear to give effect to the legislative purpose. To hold that a tax assessed against specific personal property is a lien not only upon that property but also upon all of the rest of the tax debtor's property, and that a distraint may be enforced long after the property has passed, through successive sales, into new ownerships could certainly occasionally result in injustice. It is our opinion that § 69-722, Oregon Code 1930, means that the specific personal property assessed is subject to a lien for the tax imposed upon it and that this lien may be extended to other property only through the proceedings authorized in the other sections of our code previously mentioned. Before the ''floating and inchoate'' lien granted by § 69-722 upon other property of the tax debtor becomes effective upon other personal property, a seizure or distraint is necessary; and before the tax becomes a lien upon the tax debtor's

real property, the proper entries must be made charging it against specific real property.

■■ The above being our construction of our laws, it follows that only the property assessed for the taxes which the sheriff is seeking to collect is subject to the payment of those taxes. The sheriff does not claim the benefit of the "confusion of goods" principle reviewed at some length in *Farm & Cattle Loan Co. v. Faulkner*, 34 Wyo. 199 (242 P. 415), and, hence, that rule is not before us for application. The class theory is stated in *Goodsell v. Spokane County*, supra. As already stated, the Farghers, on November 12, 1930, delivered all of their personal property to the loan company and also, as stated, the circuit court held that that transaction discharged the indebtedness of the Farghers to the loan company. Thus, the transaction was a sale which vested in the loan company title to the sheep and other property. The sheriff did not make the seizure upon which he is now relying until about three years after that transaction. Hence, he can hold none of the sheep transferred by the Farghers to the loan company liable for the Farghers' unpaid taxes except those, if any, assessed for the taxes which he is now endeavoring to collect. So far as we can learn from the record, the sheriff made no direct effort to prove that any of the property transferred had been assessed for 1927, 1928, 1929 and 1930 taxes, but sought to support his claim with a contention that all of the Farghers' property was subject to a lien for their unpaid taxes, and that when the loan company acquired the sheep its title was subject to a lien for all unpaid personal property taxes. The statute does not support his claim.

■ We come now to the 1931, 1932 and 1933 taxes. When those taxes were assessed the loan company was, in legal contemplation, the owner of the sheep.

The plaintiff, referring to the transaction of November 12, 1930, states in his brief: "The trial court held that this turning over of property and the executing of a bill of sale to the Oregon Livestock Company amounted to an accord and satisfaction of the mortgage and the Farghers had no further interest in the property." The plaintiff appears to be entirely satisfied with that conclusion of the circuit court. It follows from those facts that, on November 12, 1930, the indebtedness of the Farghers to the loan company was extinguished and the title to the sheep passed to the loan company. It is true that it did not become the beneficial owner and that it merely held title as trustee for those to whom it had sold the Fargher notes. Nevertheless, in legal contemplation, the loan company became the owner of the sheep on November 12, 1930. It was still owner on May 1, 1933, when the sheriff seized the sheep for the 1931, 1932, 1933 unpaid taxes. Here then we have a seizure by the sheriff of property belonging to the loan company for unpaid taxes which had been assessed while it was owner. In order to rid himself of liability for these unpaid taxes, the plaintiff argues that he was really a mortgagee and that § 69-722, Oregon Code 1930 (the material parts of which we have already quoted), does not subject a lien of a chattel mortgage to the lien of unpaid personal property taxes. Be this as it may, we do not believe that there existed between the loan company and the plaintiff the relationship of mortgagor and mortgagee. It is true that it had endorsed the notes, but even that circumstance did not make it a mortgagor. It held title as trustee for those who owned the notes and the latter could demand at any time that it transfer title to them. The loan company had no beneficial interest in the sheep. If the sheep had appreciated in value the owners of the notes,

and not the loan company, would have derived the benefit. The truth of the matter is that while, in legal contemplation, the loan company was the owner of the sheep the real owners were the holders of the notes. The difference, therefore, between these facts and those present in *Dimmick v. Rosenfeld,* 34 Or. 101 (55 P. 100), is apparent. In that case the judgment which the claimant was seeking to enforce against the beneficiary was not the obligation of the latter; but here the taxes which the sheriff is endeavoring to collect are the statutory liability of the owner of the sheep. We know of no provision in § 69-722 or any other portion of our laws which renders the plaintiff's interest paramount to the tax liens. Such being true, the plaintiff's interest in the sheep was subject to the lien for the unpaid 1931, 1932 and 1933 taxes.

The cause will be remanded to the circuit court with instructions to enter a decree in harmony with the views above expressed.

BEAN, KELLY, BELT, BAILEY and RAND, JJ., concur.

CAMPBELL, C. J., not sitting.