450 So.2d 521 (1984)
WALTER E. HELLER & COMPANY SOUTHEAST, INC., Appellant,
v.
Petition of B.W. WILLIAMS, Jr., Acting Tax Collector of Dade County, Florida, Appellee.
No. 82-1271.
District Court of Appeal of Florida, Third District.
April 3, 1984.
Rehearing Denied June 8, 1984.
*523 Britton, Cohen, Kaufman and Schantz and John L. Britton and J. Robert Olian, Miami, for appellant.
Robert A. Ginsberg, County Atty., and Thomas Goldstein and Robert Krawcheck, Asst. County Attys., for appellee.
Before HENDRY, BASKIN and DANIEL S. PEARSON, JJ.
HENDRY, Judge.
This is an appeal from an order of the Circuit Court in and for Dade County, Florida, denying the claim of the appellant to an interest in certain property and adjudging said property to be subject to levy and seizure by the Tax Collector for unpaid ad valorem personal property taxes which were due and owing to Dade County, as the taxing authority.
The issue presented is whether the County has a superior right to enforce the collection of unpaid personal property taxes against property allegedly owned by the delinquent taxpayer but which is subject to a creditor's prior recorded lien or security interest. The trial court concluded the county's right to enforce its tax was paramount. However, after thorough consideration of the issue in light of the briefs and arguments of counsel and the applicable law, we conclude otherwise. In our view the county's lien for taxes was not, under *524 the facts of this case, entitled to priority as against the claim of the secured creditor whose lien was first in time.
The facts, as reflected by the record, are as follows. In September, 1980, B.W. Williams, Jr., as Acting Dade County Tax Collector (Tax Collector), caused to be filed in the circuit court in accordance with section 197.086, Florida Statutes (1979),[1] a "Petition for Order Ratifying and Confirming Issuance of Delinquent Personal Property Tax Warrants" with respect to unpaid personal property taxes for the year 1979. The petition referenced a list of delinquent taxpayers for that year, which list included an apparel manufacturer and its subsidiary, Bodin Apparel, Inc./Giamo, Inc. (Bodin). It was recited in the petition that in April, 1980 the tax collector had advertised, pursuant to statute (§ 197.062, Fla. Stat. (1979)), the list of delinquent 1979 taxpayers and amounts of tax due and now sought to collect said taxes by the issuance of a multiple warrant providing for the levy upon and seizure of such tangible personal *525 property as determined necessary by the tax collector, to be effected by means of a separate warrant applicable to a particular delinquent taxpayer. On October 23, 1980 the circuit court entered its order authorizing the issuance of individual warrants and levy and seizure of so much of the tangible personal property of each of the taxpayers described on the 1979 delinquent personal property tax list as was necessary to satisfy the unpaid taxes. The order further provided for retention of the court's jurisdiction to hear such timely objections of taxpayers to the levy and seizure of their tangible personal property as might be warranted under the statutes and laws of this state and, in the event of such objection, prohibited levy and seizure of the taxpayer's personal property without prior leave of court.
The court file below reflects that on July 10, 1981 the Tax Collector filed a motion to authorize the issuance of supplemental tax warrants for collection of delinquent ad valorem personal property taxes due from Bodin for the years 1979 and 1980, totalling some $160,213.36. Pursuant to section 197.086, Florida Statutes (1979), the warrants were sought to issue against Republic Textile Equipment Co. of South Carolina, Inc. (Republic) and against Paul and Felice Dubin and Heller based upon the following facts alleged by the Tax Collector.
In November, 1979 Bodin had collateralized loans from Heller with all of its personal and real property and all of its present and future accounts receivable, which accounts were at the time of the petition being received by Heller through lock boxes at Southeast First National Bank of Miami (Southeast Bank). As to said accounts receivable, the Tax Collector asserted a superior lien for payment of the delinquent taxes, pursuant to section 197.056(1), Florida Statutes (1979).[2] Additionally, it was alleged that on or about June 17, 1980 Bodin sold the bulk of its tangible personal property  equipment used in its clothing manufacturing business  to Republic for $1,000,000, subject to the security interest of Heller in the property, and that Republic still owed money to Bodin for same. Thus it was alleged that Republic was a debtor of Bodin subject to the issuance of a tax warrant under section 197.086(2), Florida Statutes (1979), to the extent of the indebtedness. Finally, it was stated that on or about October 24, 1980 Bodin sold part of its real property located in Dade County to Paul and Felice Dubin and took back two promissory notes in the amounts of $100,000 and $215,000, which had been duly recorded and which obligation allegedly subjected the Dubins to the issuance of tax warrants under section 197.086(2).
On July 30, 1981 the court entered its order on the motion to issue supplemental tax warrants, declaring that a tax warrant should issue against the Dubins, as debtors of Bodin, to the extent of such indebtedness and in the mode and manner of then present payments until Bodin's delinquent taxes were paid in full, and further providing that no warrant should then issue against Heller but that a warrant might issue against Southeast Bank with Heller free to present any challenge as to priority at such time.
*526 By way of response, the Dubins asserted that the two promissory notes in question had been assigned by Bodin to Heller on October 24, 1980 and that an issue of priority might thus arise and therefore the Dubins, as "garnishees" under section 197.086(2), Florida Statutes (1979), sought a determination from the court as to whom payment should be made. Shortly thereafter, Heller filed its claim to the debt sought to be levied upon. Heller alleged that because of the assignment to it of the notes in accordance with the provisions of its recorded security interest and financing agreements with Bodin there were no monies due Bodin on said notes between the time of the service of the tax warrant on the Dubins and their response  the applicable period under the garnishment statute, section 77.06(1), Florida Statutes (1979)  and therefore "garnishment" under section 197.086(2) was improper and the debt should be paid to Heller.
A hearing was held before the court on the above objections and claim on November 23, 1981. The Assistant County Attorney representing the Tax Collector stated by way of background that the county discovered during its efforts to collect Bodin's delinquent taxes that almost all of the equipment on which the taxes were due had been removed from Dade County and that certain equipment had been released to Republic based on a pro rata share of the taxes owed, a very small amount of money, paid by Republic to secure its release. He further stated that because it was discovered that two tax bills had been mislaid, the full amount of taxes owed by Bodin for 1979 and 1981 was some $300,000 (the affidavit on file specified the amount of such taxes as $313,768.81), not as stated initially some $160,000.[3] The Tax Collector learned that in conjunction with a financing arrangement involving loans of some $7,000,000, Heller had acquired a security interest in all of the equipment and other personal and real property of Bodin as well as its accounts receivable. On November 1, 1979 Heller filed standard U.C.C. financing statements, which were recorded on that date, covering essentially all tangible and intangible property of Bodin, present and future accounts receivable and contract rights, and real property of Bodin. Accounts financing security agreements were executed by Bodin in favor of Heller on October 30, 1979.
The Tax Collector became aware of further dealings between Heller, Bodin and Republic in May and June, 1980. At that time, in what was described as essentially a paper transaction, Heller loaned $1,000,000 to Republic who in turn paid this sum to Bodin for its equipment which Republic was to sell, for a commission, for Heller. The proceeds to Bodin served to reduce its debt to Heller. Based on the foregoing facts, the Tax Collector sought the supplemental tax warrants against the Dubins and Bodin's accounts receivable being received by Heller through lock boxes at Southeast Bank.
Counsel for Heller took the position at the hearing that under section 197.086, Florida Statutes (1979) the question presented was strictly one of priorities and Heller's claim had priority since Bodin's assignment of the Dubin mortgage to Heller on October 24, 1980 was prior in time to the service of the supplemental tax warrant on the Dubins on July 30, 1981. The transaction was explained thusly: Heller, who previously had a mortgage on the Bodin real property in question which secured a promissory note for about $2,000,000, executed a partial release of its mortgage in order to allow Bodin to sell the property to the Dubins and when Bodin sold the property to the Dubins, they gave a mortgage back to Bodin who simultaneously assigned the mortgage to Heller, for valuable *527 consideration, all of this occurring in October, 1980, well before the service of this tax warrant.
The Tax Collector's legal position was, and is, that under section 197.056, Florida Statutes (1979), the county is granted a superior lien for its taxes upon all of the personal property of the taxpayer, which lien may be enforced by levy and seizure upon personal property of the taxpayer, including debts owed to the taxpayer, regardless of the interests of prior creditors therein. Heller's counsel's response was that the county had a first lien only upon the specific property taxed and a secondary lien on other personal property of the taxpayer. Assertedly, the lien on such other personal property was established by the service of the tax warrant, which, acting with the same force as a writ of garnishment, was subject to Heller's prior recorded security interest in Bodin's accounts receivable and to the assignment to Heller of the Dubin notes and mortgage. Counsel for the respective parties offered to stipulate to the facts since they were essentially in agreement. However, counsel for the Tax Collector next stated that an extensive factual determination and jury trial might be necessary if the court ruled the county was not entitled to its taxes, in which event the Tax Collector would allege Heller's assignment did not defeat its right to the taxes because Heller had not acted in good faith. At the conclusion of the hearing the court requested memoranda covering every point of law that attached to the cause of action. Memoranda and reply memoranda were presented and the case was submitted to the court for ruling on the Tax Collector's petition. Also filed for consideration by the trial court were affidavits in support of Heller's claim and the depositions of two Heller employees.
On April 29, 1982 the court entered its order summarily denying Heller's claim to the debt due by the Dubins on the two promissory notes and adjudging that Dade County was entitled to the installment payments on the notes until the delinquent taxes were paid in full. Following denial of its motion for rehearing, Heller took this appeal.
At the outset of our discussion, we agree with Heller's contention on appeal that since the proceeds of the Dubin notes were not the specific property assessed, the Tax Collector's efforts to enforce the lien for ad valorem personal property taxes are governed by and restricted to the procedures set forth in section 197.086. While it is clear that under section 197.056(1), liens for these taxes arose on January 1, 1979 and January 1, 1980 and attached to all the personal property of Bodin on those dates, it is additionally clear that the property, or rather the debt, in question was not subject to attachment on said dates. First, the superior lien for taxes established by section 197.056(1) is restricted to the particular class of property assessed  personal property.[4] The source of the debt owed by the Dubins to Bodin was real property, which, although it was owned by Bodin on the dates on which the taxes accrued, was not subject to the lien for taxes because the language of section 197.056(1) restricts the lien to personal property of the taxpayer. Second, even if the tax lien were properly established as against the Dubins' obligation to Bodin on the notes, the nature of such a lien would be not a "superior" lien, but rather, a general lien which would be subject to prior perfected liens of creditors of the delinquent taxpayer. See cases cited, infra, p. 532. The language of section 197.056(1) establishes that the county has a "superior" lien for unpaid personal property taxes only upon the specific personal property assessed for taxes, which lien attaches to that property on January 1 of the tax year for taxes assessed on that date.
*528 In reaching the conclusion that the county's lien for unpaid taxes which it sought to enforce by the instant proceedings against debtors of the delinquent taxpayer Bodin was a general lien not entitled to priority over Heller's prior recorded lien we have considered the facts presented by the record, the arguments of counsel, and the other applicable law, as determined by reading the provisions of the relevant statutes in pari materia and additionally, by referring to the case law, particularly from other jurisdictions where similar questions have arisen, since the precise issue is one of first impression in this state.
The cases which set forth the applicable principles of law in this area were decided in the earlier part of this century and construe the personal property tax laws of several other jurisdictions which are similar enough to our own Florida statutes to assist in our interpretation of the relevant provisions thereof. In Scottish American Mortgage Co. v. Minidoka County, 47 Idaho 33, 272 P. 498 (1928), the Idaho supreme court considered a statute which provided that a tax on migratory livestock was a lien on all other personal and real property of the person assessed. The court applied the settled rule that a construction rendering a statute of doubtful constitutionality will not be adopted if another construction is available and concluded that while the statute provided the lien of taxes was a first lien upon the personal property assessed, it was a lien only on the then existing interest of the taxpayer in any other (e.g., real) property and was not superior to an incumbrance (a mortgage which had been foreclosed) on such other property theretofore created by its owner. Restriction of freedom to contract, specifically, to mortgage one's (real) property, was cited as a basis for the construction reached of the statute.
The issue of the priority of a tax lien as against property other than that assessed for taxes was also considered by the high courts of several other northwestern states in the 1920's and '30's. In Lyman County, S.D. v. Scott, 68 N.D. 596, 281 N.W. 902 (1938); and Owens v. Oregon Livestock Loan Co., 151 Or. 63, 47 P.2d 963 (1935), cited by appellant, the courts ruled that only personal property which belonged to the tax debtor at the time of the distraint could be seized under a tax lien. The South Dakota supreme court in Scott explained that the statutory remedy of "distraint" "is the taking of a chattel from the possession of a wrongdoer or obligor to enforce the performance of an obligation... It does not authorize the taking of property of one person to satisfy the debt of another." Id. 281 N.W. at 906. In Owens, the Oregon supreme court, citing the need for a practical construction of the statute, explained that the statutory lien against other property of the tax debtor may be extended only in accordance with statutory proceedings which authorize seizure and only upon personal property of the person charged with the tax. Such a lien was referred to as "floating and inchoate" and "effective upon such other personal property only upon a seizure or distraint [thereof]." Id. 47 P.2d at 968. The court observed that the "distraint is ineffective unless the property [seized] belongs to the tax debtor at the time of the distraint. The fact that it belonged to the tax debtor at the time the tax was levied is immaterial if it now belongs to someone else." Id. at 967.
In Raymond v. King County, 117 Wash. 343, 201 P. 455 (1921) (en banc), the court wished to avoid an interpretation of the statute contended for, whereby the lien extended against other property of the taxpayer, if enforced against such property in the hands of another, "might cause a chattel, by mere sales and deliveries [to be] charged with a constantly increasing burden." Id. 201 P. at 455. The rule of construction applied was stated as follows:
Manifestly, we think, had it been intended that the levy could be made upon any property the person charged with the taxes at any time owned while so charged, it would have been so stated in express terms, and the specific provisions prescribing upon what property the levy should be made would not have been so framed as to exclude the idea.
*529 Id. at 456. An analogous case involving a state's right to enforce collection of a tax on dividends of a railroad company under a statute providing such tax was a lien on other personal and real property of the railroad company was decided by the Second Circuit Court of Appeals in 1911. Central Trust Co. of New York v. Third Ave. R. Co., 186 F. 291, 292 (2d Cir.), cert. denied sub nom People of the State of New York v. Central Trust Co., 223 U.S. 721, 32 S.Ct. 523, 56 L.Ed. 629 (1911). Therein, the court recognized that "taxes due the state have no priority of payment out of a fund in court for distribution, unless the priority was expressly given by statute, or unless the fund has come into court impressed with a priority for the tax."
Thus, the general rule expressed by the foregoing authorities is that the state's right to impose and collect taxes, although derived from its authority as a sovereign, is solely statutory in expression and is limited by the terms of the statutes authorizing the tax and governing its collection.[5] Furthermore, statutes imposing the lien for personal property taxes as a general lien upon other property of the taxpayer have been held not to displace prior contract liens. See cases cited, supra.[6]
The single Florida case which has addressed this issue is City of Marianna v. Russ, 114 Fla. 624, 154 So. 317 (1934). The Florida supreme court therein considered a special act which made the city's lien for personal property taxes a lien against real property owned by the taxpayer. The court first determined that the city's tax lien would not, in any event, prevail over a prior mortgage lien on the taxpayer's real property where the tax liens were established prior to enactment of the statute which extended the lien against such real property. As to the issue of priority, the court stated that
while [the statute] provides taxes on personal property shall be and constitute a lien on real estate of the owner of the [taxed] personal property, there is not attempted legislative pronouncement that such lien on real estate for the tax on personal property shall be superior to all other liens.
Id. 154 So. at 321. Thus, the decision aligns Florida with other jurisdictions which follow the rule of strict statutory construction and give "the lien of taxes *530 priority over senior incumbrances, if at all, only upon the property itself upon which the tax was levied." Scottish American Mortgage Co. v. Minidoka County, supra, 272 P. at 500. Our construction of the relevant Florida statutes further supports this determination.
The Tax Collector has contended that under section 197.056(1), Florida Statutes (1979), the county's tax liens attached to all of Bodin's property as of January 1, 1979 and January 1, 1980 and the assignment after those dates of monies due and owing to the taxpayer in the future should not serve to defeat the payment of delinquent taxes. In our view, this position ignores the clear import of the language of section 197.056(1) and the other relevant statutes, in particular, section 197.086, Florida Statutes (1979), construed as a whole and in their historical context.
The history of the enactment of sections 197.056 and 197.086 is germane in our attempt to construe these sections inasmuch as they present an ambiguity as to the nature of the tax lien created upon other personal property of the taxpayer. Section 197.056 was enacted in 1972, as Chapter 72-268, section 1, Laws of Florida. The first sentence of subsection (1), stating "All taxes shall be a first lien, superior to all other liens, on any property against which the taxes have been assessed. .[,]" was derived from former section 197.011, Florida Statutes (1971), which was in turn derived from former section 192.21, Florida Statutes (1967). The latter part of the second sentence of section 197.056(1), stating, "All personal property tax liens, to the extent that the property to which the lien is applicable cannot be located in the county or to which the sale of the property is insufficient to pay all delinquent taxes, interest, fees and costs due, shall be liens against all other personal property of the taxpayer within that county[,]" (e.s.), was derived from former section 197.015, Florida Statutes (1971), which carried forward the identical language of former section 200.02, Florida Statutes (1967). Section 197.015 and its predecessor section 200.02, in addition to providing that "[a]ll tangible personal property taxes shall be a lien on all the personal property of the taxpayer in the county in which they are assessed from January 1 of the year the property is liable for assessment[,]" continued, "The lien of tangible personal property taxes shall be superior to all other liens..." The omission from section 197.056(1) of this language suggesting a superior lien on all personal property of the taxpayer, and the addition of the qualifying language providing under what circumstances the tax liens would extend to other personal property of the taxpayer (i.e., "to the extent that the property to which the lien is applicable cannot be located in the county or to which the sale of the property is insufficient to pay all delinquent taxes..."), are indicative of the legislative intent to restrict the superior lien for taxes to the specific property assessed.
Florida law follows the general rule that taxes can be levied, assessed and collected only in the manner ordained by statute. Maas Brothers, Inc. v. Dickinson, 195 So.2d 193 (Fla. 1967); State ex rel. Seaboard A.R. Co. v. Gay, 160 Fla. 445, 35 So.2d 403 (1948); see City of Marianna v. Russ, supra; Art. VII, § 1(a), Fla. Const. Additionally, the Florida cases recognize that tax statutes which are ambiguous are to be construed most strongly against the government and liberally in favor of the taxpayer or citizen. Harbor Ventures, Inc. v. Hutches, 366 So.2d 1173 (Fla. 1979); State ex rel. Wedgworth Farms, Inc. v. Thompson, 101 So.2d 381 (Fla. 1958); State ex rel. Tampa Electric Co. v. Gay, 40 So.2d 225 (Fla. 1949). Applying these rules of statutory construction to section 197.056(1), in light of its prior history, strengthens our belief that this section, which alone creates and perfects the lien for unpaid taxes, Op.Atty.Gen. of Fla. 076-36 (Feb. 18, 1976), does not expressly constitute such lien as "superior" in regard to other personal property owned by the taxpayer on the date the taxes accrue and the lien arises, January 1 of the tax year.
*531 We turn next to the "enforcement" provision of the statutes, section 197.086, and Heller's contention that since the (proceeds of) the notes were not the specific property assessed for taxes, the Tax Collector's efforts to enforce the tax lien against this debt allegedly owed to the taxpayer are governed by and restricted to the procedures outlined in this section. Section 197.086(1)[7] sets forth the procedural steps to be followed by the tax collector in the collection of delinquent personal property taxes, culminating in the issuance of an order of court "directing the tax collector or his deputy to levy upon and seize so much of the tangible personal property of the taxpayers who are listed in the petition as is necessary to satisfy the unpaid taxes[,]" with the court retaining jurisdiction "to hear such objections of taxpayers to the levy and seizure of their tangible personal property as may be warranted under the statutes and laws of this state." In this case the Tax Collector properly followed these statutory procedures to enforce the tax, having determined, as contemplated by section 197.056(1), that "the property to which the lien is applicable [could not] be located in the county" and further, that the amount of money paid by Republic, as the purchaser of the taxed property which bore the superior tax lien was "insufficient to pay all delinquent taxes, ..."[8] Entry of the court's order on July 30, 1981 authorizing the issuance of the supplemental tax warrant for the 1979 and 1980 personal property taxes of Bodin as against the Dubins based on their debt owed to the delinquent taxpayer set the stage for the invocation of the procedures of section 197.086(2), referred to by the parties as a "garnishment" proceeding.
The legislative history of section 197.086 demonstrates that the procedures detailed in subsection (1) of petitioning the court for issuance of an order directing levy and seizure were added in 1975, Ch. 75-136, § 3, Laws of Fla., according to the statute, to "safeguard the constitutional rights of the taxpayer..." These procedural safeguards are a prerequisite to levy and seizure by the tax collector upon personal property of the taxpayer under subsection (1), and to levy by tax warrant "having the same force as a writ of garnishment" upon debtors or those holding personal property of the taxpayer, under subsection (2). In the instant case, the Tax Collector sought to enforce collection of Bodin's delinquent personal property taxes by supplemental warrant issued against the Dubins, as authorized by the court's order of July 30, 1981.
Application of the plain meaning of the language of section 197.086(2),[9] further leads us to conclude that the Tax Collector's attempt to enforce the lien for delinquent personal property taxes against the proceeds of the Dubins' promissory notes must fail. It is undisputed that these notes were assigned to Heller for valuable consideration on October 24, 1980, some nine months prior to entry of the order authorizing issuance of a supplemental tax warrant against the Dubins based upon the debt evidenced by the notes. It is additionally clear from the statute that the tax lien could be established against the property or debt involved sub judice only by service of the warrant upon the third-party (debtor of the taxpayer). The warrant may reach, and the lien attach to, only such debt as was owed to the taxpayer (Bodin) by the third-party (Dubins) at the time the warrant *532 was served. This construction is supported by the case law regarding strict construction of tax statutes previously discussed herein.
In reaching this conclusion, since the warrant is to have the "same force as a writ of garnishment," we have additionally referred to the language of the applicable garnishment statute, section 77.06, Florida Statutes (1979), which states:
(1) Service of the writ shall make garnishee liable for all debts due by him to defendant and for any tangible or intangible personal property of defendant in his possession or control at the time of the service of the writ or at any time between the service and the time of his answer. (e.s.)
Sub judice, it is clear that neither at the time of service of the supplemental warrant upon the Dubins on July 30, 1981, nor between said date and the time of their answer filed on July 31, 1981, were the Dubins indebted to the delinquent taxpayer, Bodin. Thus, the warrant could not properly serve to "garnish" this debt. Such a garnishment under these facts would result in the payment of delinquent taxes with funds not those of the delinquent taxpayer which result, as discussed supra, n. 6, should be avoided.[10]
Finally, we find that there is an additional basis in the statutes and the law which refutes the Tax Collector's claim to a superior lien upon the property or debt in question. Section 197.106, Florida Statutes (1979) provides, in pertinent part, as follows:
197.106 Sale of tangible personal property after seizure.
* * * * * *
(3) If the property levied upon cannot be located in the county or is sold for less than the amount of taxes, delinquent charges, interest, costs and collection fees, the deficit shall be a general lien against all other personal property of the taxpayer situated in the county. * * * (e.s.)
The language of the parallel rule of the Florida Department of Revenue, set forth as Rule 12D-12.11, Fla. Admin. Code, is also instructive and may properly be considered since it accords with the statutory provision. The Rule states that "[i]f the sale of the personal property assessed is insufficient to pay all delinquent taxes, interest, fees and costs due, then the lien shall attach to other personal property of the taxpayer in the county." (e.s.) The language of both the statute and the rule, considered together, makes clear that the lien for taxes attaches as a general lien to other property of the tax debtor upon the determination of deficiency referred to therein.
The well-established rule governing priority of lien interests is "the first in time is the first in right." United States v. City of New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520, 525-526 (1954); United States v. Atlantic Municipal Corp., 212 F.2d 709 (5th Cir.1954); United States v. First Federal Savings & Loan Ass'n, 155 So.2d 192 (Fla. 2d DCA 1963); Richardson Tractor Co. v. Square Deal Machinery & Supply Co., 149 So.2d 388 (Fla. 2d DCA 1963). Cf. Department of Revenue v. Potamkin Dodge, Inc., 442 So.2d 287 (Fla. 3d DCA 1983) (because Dept. failed to perfect, by warrant, its lien for sales taxes, it was a general creditor, with no prior claim on funds deposited in court registry); Sun First National Bank of Orlando v. Miller, 397 So.2d 943 (Fla. 1st DCA 1981) (Dept. of Revenue, which became lien creditor of debtor before bank perfected its security interest in two vehicles of debtor, took priority under § 679.310, Fla. Stat. (1977)). Furthermore, as for a lien created by state law, its priority depends "on the time it attached to the property in question and became choate." United States v. City of New Britain, *533 supra, 347 U.S. at 86, 74 S.Ct. at 370, 98 L.Ed. at 526. The federal rule is that state tax liens are perfected in the sense that there is nothing more to be done to have a choate lien when the identity of the lienor, the property subject to the lien, and the amount of the lien are established. United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). Under these principles, Heller's lien, having attached on or about November 1, 1979 (the date of filing of its U.C.C. financing statement), to all property, accounts receivable and other financial obligations owed to Bodin, must prevail since it was prior in time to the Tax Collector's general lien which attached to the property in question upon service of the supplemental warrant on July 30, 1981.
In conclusion, it should be noted that the Tax Collector has framed its arguments on appeal so as to raise the issue of fraud on the part of Heller relative to the removal from the county of Bodin's equipment which was subject to the lien for taxes. Heller has responded that the issue goes outside of the pleadings in the trial court. We find that the issue was properly before the trial court as it was raised in the parties' arguments and memoranda of law, as well as in the proofs submitted, particularly the depositions of the two Heller employees. However, it is not possible to determine from the trial court's summary ruling adverse to Heller's claim whether or not the court decided if Heller's actions somehow constituted fraud so as to bar its right to assert its lien interest on the property in question. We have carefully considered this issue, as presented in the briefs and the record before the trial court, and have concluded that the record fails to establish fraud on the part of Heller.
In accordance with the foregoing reasons and authorities, the trial court's order denying Heller's claim to the property in question is reversed.
Reversed.
NOTES
[1] Delinquent personal property taxes; warrants; court order for levy and seizure of personal property; seizure; fees of tax collectors. 
(1) Prior to May 1 of each year immediately following the year of assessment, the tax collector shall prepare a list of the unpaid personal property taxes containing the names and addresses of the taxpayers and the property subject to the tax, as the same appear on the tax roll. Prior to April 30 of the next year, the tax collector shall prepare warrants against the delinquent taxpayers providing for the levy upon, and seizure of, tangible personal property. Within 30 days from the date such warrants are prepared, the tax collector shall cause the filing of a petition in the circuit court for the county in which the tax collector serves, which petition shall briefly describe the levies and nonpayment of taxes, the issuance of warrants, and proof of the publication of notice as provided for in s. 197.062, and shall list the names and addresses of the taxpayers who failed to pay taxes and the personal property taxed, as the same appear on the assessment roll. Said petition shall pray for an order ratifying and confirming the issuance of said warrants and directing the tax collector or his deputy to levy upon and seize the tangible personal property of each delinquent taxpayer to satisfy the unpaid taxes set forth in the petition... Immediately upon the filing of said petition, the tax collector, through his attorney, shall request the earliest possible time for hearing before the circuit court on said petition, at which hearing the tax roll shall be presented and the tax collector or one of his deputies shall appear to testify under oath as to the nonpayment of the personal property taxes listed in the petition. Upon the filing of said petition, the clerk of the court shall notify each delinquent taxpayer who is included within the petition that a petition has been filed and that upon ratification and confirmation of the petition the tax collector shall be authorized to issue warrants and levy upon, seize, and sell so much of the personal property as to satisfy the delinquent taxes, plus cost, interest, attorney's fees, and other charges. Said notice shall be by certified mail, return receipt requested. If it shall appear to the circuit court that the taxes as appear on the tax roll are unpaid, the court shall issue its order directing the tax collector or his deputy to levy upon and seize so much of the tangible personal property of the taxpayers who are listed in the petition as is necessary to satisfy the unpaid taxes. The Department of Revenue shall provide reasonable rules and regulations to guide the tax collector in the collection and enforcement of taxes which are delinquent or which may become delinquent. This proceeding is specifically provided to safeguard the constitutional rights of the taxpayers in relation to their tangible personal property and to allow the tax collector sufficient time to collect said delinquent personal property taxes before the filing of petitions in the circuit court as provided and shall be conducted with these objectives in mind. The court shall retain jurisdiction over the matters raised in the petition to hear such objections of taxpayers to the levy and seizure of their tangible personal property as may be warranted under the statutes and laws of the state.
(2) A tax warrant issued by the tax collector for the collection of tangible personal property taxes shall, after the court has issued its order as set forth in subsection (1), have the same force as a writ of garnishment when levied by the tax collector upon any person, firm, or corporation who has any goods, moneys, chattels, or effects of the delinquent taxpayer in his hands, possession, or control or who is indebted to such delinquent taxpayer. When any tax warrant is levied upon any debtor or person holding property of the taxpayer, the debtor or person shall pay the debt or deliver the property of the tax delinquent to the tax collector levying the warrant, and the receipt of the tax collector shall be complete discharge to that extent of the debtor or person holding the property. The tax collector shall make note of the levy upon the tax warrant.
* * * * * *
(emphasis supplied)
[2] 197.056 Lien of Taxes. 

(1) All taxes imposed pursuant to the Constitution and laws of this state shall be a first lien, superior to all other liens, on any property against which the taxes have been assessed, and shall continue in full force from January 1 of the year the taxes were levied until discharged by payment or until barred by chapter 95. All personal property tax liens, to the extent that the property to which the lien is applicable cannot be located in the county or to which the sale of the property is insufficient to pay all delinquent taxes, interest, fees, and costs due, shall be liens against all other personal property of the taxpayer within that county... All owners of property shall be held to know that taxes are due and payable annually and are charged with the duty of ascertaining the amount of current and delinquent taxes and paying them before April 1 of the year following the year in which taxes are assessed. * * * (emphasis supplied).
This section was transferred by Ch. 82-226, § 31, Laws of Florida, and renumbered as section 197.0151 (Supp. 1982).
[3] This discrepancy is not significant, however, in light of the pertinent language of section 197.056(1), Fla. Stat. (1979), providing that

any acts of omission or commission may be corrected at any time by the officer or party responsible for them in like manner as provided by law for performing acts in the first place, and when so corrected they shall be construed as valid ab initio and shall in no way affect any process by law for the enforcement of the collection of the tax... .
[4] City of St. Petersburg v. Fiore, 160 Fla. 106, 33 So.2d 852 (1948) (intention to create a tax lien or to extend it to any particular species of property must clearly appear in statute, since tax lien is solely a creature of statute); Op.Atty.Gen. of Florida 065-125 (Nov. 4, 1965) (construing predecessor section 192.21, Florida Statutes (1965) ("These statutory liens do not appear to encumber real property of the taxpayer.")
[5] Cf. cases cited in n. 6, infra.
[6] We note, however, that other courts have taken a broader view of the state's authority in this area. E.g., In Re Ever Krisp Food Products Co., 307 Mich. 182, 11 N.W.2d 852, 861 (1943) (statute stating personal property tax was specific and perfected lien against all personal property of person assessed without regard to whether it continued in the hands of tax debtor constituted such taxes "a first lien superior to all other claims, encumbrances and liens whether prior or not."); State of Minnesota v. Central Trust Co. of New York, 94 F. 244, 249 (8th Cir.), cert. denied, 174 U.S. 803, 19 S.Ct. 883, 43 L.Ed. 1188 (1899) ("The state has an undoubted power to create a lien for a personal tax on other property of the tax debtor than that which was assessed for the tax, and to make the same superior to all other liens."). See also Union Central Life Ins. Co. v. Black, 67 Utah 268, 247 P. 486 (1926) (Legislature has power to make taxes a lien on all property of owner of taxed property prior to all other liens; superior lien was inferred from general provisions of statute under rule adopted in state favoring construction giving tax liens priority over liens created by private contract.) For a discussion of these positions and other considerations involved when taxes are sought to be levied against property of the tax debtor in the hands of another see Note, "Tax Liens and the Rights of Third Persons," 54 Harv.L.R. 112 (1940). One major consideration pointed out by the author was that

[a]side from their constitutionality, the desirability of statutes giving a first lien on property other than that taxed is doubtful. They may in effect use one man's property to pay another man's debt... The possibility of such an occurrence is a serious drag on loan transactions. A recording system protects a mortgagee against liens in existence; it cannot protect him against future liens to which his claim will be subordinated. Nor can a mortgagee protect himself by a provision in the mortgage allowing foreclosure when the mortgagor defaults on any tax the non-payment of which would constitute it a prior lien on the mortgaged property; the delinquency which constitutes the default also subordinates the mortgagee's claim to that of the state.
Id. at 116-117.
[7] See n. 2, supra, for substantially complete quotation of § 197.086(1).
[8] With regard to this determination of insufficiency, we briefly dispose of Heller's contention that the record is unclear as to what collections were made by the Tax Collector. We note that section 197.096, Florida Statutes (1979), provides, as follows:

The tax collector shall keep a record [known as the `tangible personal property tax warrant register'] of all warrants and levies made under this chapter and shall note on such record the date of payment, the amount of money, if any, received, and the disposition thereof made by him.
Thus, the tax warrant register may be referred to in any case presenting an alleged evidentiary deficiency in this respect.
[9] See n. 2, supra, for substantially complete quotation of § 197.086(2).
[10] We mention, in passing, that the provision of section 197.086(2), that the warrant "shall have the same force as a writ of garnishment" plainly means just that; not that the tax collection proceeding becomes a full-fledged garnishment proceeding with concomitant rights, e.g., to a jury trial.