Mr. Scott Knox Brevard County Attorney 2725 Judge Fran Jamieson Way Viera, Florida 32940
Dear Mr. Knox:
On behalf of the Brevard County Board of County Commissioners, you ask the following question:
May excess funds be transferred between tourist development accounts without an amendment to the tourist development plan to supplement an anticipated shortfall in funding of a beach renourishment project?
In sum:
Where the tourist development plan specifies the funding for each of the projects set forth in the plan, excess funds may not be transferred between such accounts without amending the plan by an affirmative vote of a majority plus one additional member of the board of county commissioners.
According to your letter, Brevard County, in conjunction with the United States Army Corps of Engineers and the Canaveral Port Authority, is in the process of conducting a two-phase beach renourishment project. Under the county's tourist development plan, beach renourishment and erosion control is an authorized use for tourist tax revenues, with thirty-five percent of the first two cents and twenty-five percent of the third cent of the tax allocated for this use. Other authorized uses under the plan for the remaining tax revenues include promotion and advertising, tourist information bureaus, and cultural and special events. You state that the county code prohibits substantial amendment to the plan without an ordinance amendment approved by a super-majority of the board of county commissioners.
The county anticipates a shortfall in county funding for the beach renourishment project and is interested in transferring funds from accounts reserved for other authorized tourist tax revenue uses and repaying them with beach renourishment revenue as it becomes available.
Section 125.0104, Florida Statutes, known as the "Local Option Tourist Development Act" (act),[1] authorizes a county to impose a tax on short-term rentals of living quarters or accommodations within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.[2] The purpose and intent of section 125.0104, Florida Statutes, is to "provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state."[3]
Section 125.0104(5)(a), Florida Statutes, enumerates the exclusive purposes that may be funded by tourist development taxes. Among the authorized uses for the tourist development tax revenues are beach improvement, renourishment, restoration, and erosion control.[4]
Section 125.0104, Florida Statutes, requires that the governing body of a county adopt a resolution establishing and appointing the members of the county tourist development council at least sixty days prior to the enactment of the ordinance levying the tourist development tax.[5] This council is required to prepare and submit a plan for tourist development to the county governing board.[6] The plan must set forth the anticipated net tourist development tax revenue to be derived by the county for the twenty-four month period following the levy of the tax; the tax district in which the tax is proposed; and a prioritized list of the proposed uses of the tourist development tax revenue by specific project or special use with the approximate cost or expense allocated for each specific project or special use.[7]
The plan prepared by the county tourist development council must be adopted by the governing board of the county as part of the ordinance levying the tax.[8] Section 125.0104(4)(a), Florida Statutes, requires that prior to the ordinance imposing the tax becoming effective, the electors of the county, or the electors of the subcounty special district in which the tax is to be levied, must approve the ordinance authorizing the levy and imposition of the tax.
Florida follows the general rule that taxes may be levied, assessed, and collected only in the manner prescribed by statute.[9] It is also a fundamental principle that funds raised by taxation for one purpose cannot be converted to another without legislative authority.[10] This office, for example, in Attorney General Opinion 86-39 stated that excess funds from a tax levy to finance the acquisition and construction of a sports complex could not be used for any other project. In Attorney General Opinion 00-06, this office concluded that revenues from the local government infrastructure surtax must be expended on projects falling within the general description on the ballot.
It appears from your letter that the tourist development plan adopted by the board of county commissioners includes beach restoration as one of the authorized uses for tourist development tax revenues. Thus, the project for beach restoration is part of the plan approved by the electors. Funding for the projects listed in the plan is specifically provided for within the plan, which states that thirty-five percent of the first two cents and twenty-five percent of the third cent of the tax is designated for beach renourishment and erosion control.
As noted above, the county would like to temporarily transfer funds allocated for other projects. Repayment would be made from beach renourishment funds as they became available. Nothing in the approved plan provides for transferring funds or altering the specific funding prescribed in the ordinance.
The Local Option Tourist Development Act, however, permits amendment and change to a county's tourist development plan. Section 125.0104(4)(d), Florida Statutes, provides in pertinent part that "[a]fter enactment of the ordinance levying and imposing the tax, the plan of tourist development may not be substantially amended except by ordinance enacted by an affirmative vote of a majority plus one additional member of the governing board."[11]
The ability of the governing body to effect changes in the tourist development plan has been acknowledged by the Supreme Court of Florida in Rowe v. Pinellas Sports Authority.[12] In that case, the governing body of the county amended the tourist development plan by ordinance without a referendum. It was argued that the governing body's action was invalid because it had not been submitted to the voters in a referendum as was the initial ordinance containing the tourist development plan. The Court concluded that there is no requirement in the Tourist Development Act that a referendum be held to ratify an amendment, but rather the procedure for amendment is contained in section125.0104(4)(d), Florida Statutes.
In light of the above, I am of the opinion that where the tourist development plan specifies how each of the projects set forth in the plan are to be funded, excess funds may not be transferred between such accounts without amending the plan as prescribed in section 125.0104(4)(d), Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 125.0104(1), Fla. Stat.
[2] See, s. 125.0104(3)(a), Fla. Stat., stating it is the intent of the Legislature that every person who rents, leases, lets living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less is exercising a privilege which is subject to taxation under this section. . . ."
[3] See, Ops. Att'y Gen. Fla. 95-71 (1995), 94-12 (1994), 87-16 (1987), and 83-18 (1983).
[4] Section 125.0104(5)(a)4., Fla. Stat.
[5] Section 125.0104(4)(b), Fla. Stat.
[6] Section 125.0104(4)(c), Fla. Stat.
[7] Id.
[8] Section 125.0104(4)(d), Fla. Stat.
[9] See, Walter E. Heller Company Southeast, Inc. v. Williams,450 So.2d 521 (Fla. 3d DCA 1984), rev. den., 462 So.2d 1108
(Fla. 1985); State ex rel. Seaboard Air Line R. Co. v. Gay,35 So.2d 403 (Fla. 1948); Maas Brothers, Inc. v. Dickinson,195 So.2d 193 (Fla. 1967). And see, Op. Att'y Gen. Fla. 84-65 (1984) (units of local government have no inherent power to impose taxes; the taxing power must be derived from the state).
[10] See, e.g., Supreme Forest Woodmen Circle v. Hobe Sound Co.,189 So. 249 (Fla. 1939); Op. Att'y Gen. Fla. 77-26 (1977). Cf.,Dickinson v. Stone, 251 So.2d 268 (Fla. 1971). And see, Oven v.Ausley, 143 So. 588, 589-590 (Fla. 1932), stating:
"When an enforced contribution is exacted from the people by the power of taxation, it is for a specific public purpose, and the fund so raised is a trust fund in the hands of the legal custodians of it. There may exist circumstances in which the fund may be diverted to some other lawful purpose than that for which it was raised. Appropriation of public moneys for certain public purposes involves the power of taxation, and when the money is taken from a fund created by the levy of a tax and applied to some other purpose it is equivalent to the levy of a tax for such purpose. The limitation upon the rate of taxation is for the protection of taxpayers and to secure economy in the expenditure of public moneys."
[11] See also, s. 125.0104(7), Fla. Stat., which also contemplates that the plan for tourist development approved by the governing body of the county may be "amended from time to time pursuant to paragraph (4)(d)." You have advised this office that the county ordinance levying the tourist development tax prohibits substantial amendment to the plan without an ordinance amendment approved by a super-majority of the board.
[12] 461 So.2d 72 (Fla. 1984).